599 A.2d 875

**SUBSEQUENT INJURY FUND**

v.

**Wayne EHRMAN, et al.**

**No. 340, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

Jan. 2, 1992.

742

Lawrence P. Fletcher–Hill, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, Sophia L. Swope and George E. Barrett, Asst. Attys. Gen., Towson, on the brief), for appellant.

Herbert J. Arnold (Arnold, Beauchemin & Tingle, on the brief), Baltimore, for appellee, Ehrman.

Wilbert L. Taylor, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., and Thomas J. Michels, Asst. Atty. Gen., on the brief), Towson, for appellee, Injured Workers' Ins. Fund.

Argued before FISCHER, CATHELL and DAVIS, JJ.

CATHELL, Judge.

The trial court in this workers' compensation case fashioned a decision that was unsatisfactory to all parties. Not surprisingly, all the parties subsequently appealed. The statement of facts contained in the claimant's brief best establishes the process by which the matter reaches us.

We paraphrase it with certain omissions and addendums as is necessary.

Wayne Ehrman (Claimant) injured his back during the course of his employment while working for Culligan Water Conditioning Company (Employer).[1] Ehrman filed a claim with the Workers' Compensation Commission (Commission) pursuant to the provisions of Maryland Annotated Code article 101.[2] The Commission, on July 20, 1982, found that Claimant had sustained an accidental injury on May 6, 1982, arising out of and in the course of his employment and that he was temporarily totally disabled. Insurer was ordered to pay temporary total disability benefits and did not contest the findings in any manner. Almost four years later, Insurer was directed to furnish vocational rehabilitation to Claimant. Again, Insurer took no appeal from the Commission's determination.

On June 14, 1985, Claimant again filed issues with the Commission and, for the first time, impleaded the Subsequent Injury Fund as a party. He requested that the Commission determine the extent of his permanent disability resulting from both the 1982 accident and certain alleged pre-existing conditions. When impleaded, the Subsequent Injury Fund (Fund) responded by filing issues which included: (1) whether Claimant had sustained an accidental injury in 1982 arising out of or in the course of his employment;

---

1. Employer is represented by the Injured Worker's Insurance Fund. We shall hereafter refer to Employer and its insurance company jointly as Insurer.

2. In this opinion we are concerned with certain sections of Maryland Annotated Code, article 101 as it existed at the time the controversy arose. Article 101 and the applicable sections have since been repealed and reenacted within the Labor and Employment Article. Former Article 101, section 56 is now contained in Labor and Employment Article sections 9–737 *et seq.* Former section 66 is now contained primarily in Labor and Employment Article sections 9–801 *et seq.* There were no relevant substantive changes. The term "Workmen's" contained in former Article 101 has been changed to "Workers'." We have used the more accurate "Workers'" throughout to reflect modern usage even though we are construing the former statute.

and (2) whether there was a causal connection between the accidental injury of 1982 and Ehrman's claimed disability. Insurer raised no issues with respect to the 1985 filing.

The Commission reopened the proceeding and conducted a hearing on February 4, 1988, on the issues filed in 1985. On March 14, 1988, the Commission determined that Claimant had not suffered an accidental injury in 1982 arising out of or in the course of his employment and, accordingly, his disability was not a result of that injury.

Ehrman appealed to the circuit court and ultimately filed a Motion for Summary Judgment in which he contended that the Commission erred when it permitted the Fund to raise the issues of accidental injury and causal connection at the 1988 hearing. He further asserted that the Fund and Insurer should be estopped from denying the claim. The trial court incongruously found that Claimant was not entitled to a judgment on his motion but then, nevertheless, granted it based on its conclusion that it had the power to fashion an equitable remedy.

On appeal, the Subsequent Injury Fund raises one question to which it presents three arguments:

Can the Subsequent Injury Fund be estopped from asserting a defense to its liability based on procedural defaults of another party, the insurer, which occurred before the Fund was made a party?

It argues:

1. The Fund has the full authority of a party before the Commission.
2. There is no basis for estoppel in the Fund's conduct.
3. The lower court abused its discretion in fashioning what it viewed to be an equitable result.

Insurer presents the question differently:

Did the trial court err in granting partial summary judgment in favor of the Claimant as a matter of law?

It posits four arguments:

1. The trial court exceeded its statutory appellate authority.

2. Even if authorized Claimant waived the issue by failing to raise the procedural issue before the Commission.

3. Even if authorized Claimant's Motion for Summary Judgment was procedurally deficient.

4. Even if authorized Claimant's motion was insufficient on the merits.

Claimant also presents the questions somewhat differently. We list his questions in reverse order:

1. Does the Subsequent Injury Fund, a legislatively created entity, possess the power to assert the issues of accidental injury and causal connection upon being impleaded into a proceeding, when it was delegated neither the express nor implied authority to do so in its enabling act or subsequent amendments thereto?

2. Is the Subsequent Injury Fund equitably estopped from contesting the issues of accidental injury and causal connection because it is in the same equitable shoes as the employer and its insurer where inequitable voluntary conduct induced the Claimant's reliance?

### Claimant's Issues

We have determined that the case *sub judice* can best be resolved by first addressing the issues presented by Claimant.

### The Law

█ In *Subsequent Injury Fund v. State Roads Commission,* 35 Md.App. 353, 355, 370 A.2d 597 (1977), we were faced with a matter of statutory interpretation relating to whether the Fund's liability may be satisfied when an employer furnishes certain pension benefits. We were charged with interpreting the provisions of Section 33. This Court then quoted from the Court of Appeals' decision in *Mazor v. Dep't of Correction,* 279 Md. 355, 369 A.2d 82 (1977), six principal guidelines of statutory interpretation:

"[T]he cardinal rule of construction of a statute is to ascertain and carry out the real intention of the Legislature....

The primary source from which we glean this intention is the language of the statute itself....

And in construing a statute we accord the words their ordinary and natural signification....

If reasonably possible, a statute is to be read so that no word, phrase, clause or sentence is rendered surplusage or meaningless....

Similarly, wherever possible an interpretation should be given to statutory language which will not lead to absurd consequences....

Moreover, if the statute is part of a general statutory scheme or system, the sections must be read together to ascertain the true intention of the Legislature."

The Court of Appeals, in *Subsequent Injury Fund v. Pack*, 250 Md. 306, 311, 242 A.2d 506 (1968), held that the Fund did not have the authority to appeal a Commission order. It emphasized that portion of Maryland Annotated Code article 101 which permitted an appeal to the courts by a "person" and framed the issue before it as: "[W]hether the Fund is a 'person'." *Id.* at 311, 242 A.2d 506. The Court then held that the Fund was not a person and thus had no right to appeal. The Court opined that the Fund was "nothing more than a glomerate of money"; that it was not supervised by a governing board with authority to appeal; and that it was not an artificial person, *i.e.*, corporation. *Id.* It further opined, however, that if the Legislature intended for the Fund to have the right to appeal, it could have given it that right. *Id.*

The Legislature responded with Chapter 394 of the Acts of 1969, passed as an emergency measure, specifically providing that the Fund would have the right to appeal to the circuit court and to this Court. This was primarily accomplished by expanding the definition of "person" to include the Fund in the appeal section of Article 101 of the Code.

In *Subsequent Injury Fund v. Howes*, 11 Md.App. 325, 333, 274 A.2d 131, *cert. denied*, 261 Md. 725 (1971), we opined that until 1969 the Fund could not be a party in any proceeding and then emphasized that the 1969 Act merely permitted the Fund to appeal. We concluded that even after the enactment of Chapter 394 of the Acts of 1969 the Fund had no standing to be a party before the Commission. Because the Commission's findings in *Howes* had predated the modification of the statute, we held the Fund had no standing in the circuit court. *Howes*, 11 Md.App. at 333, 274 A.2d 131. We did, however, "assume" that the Fund was properly before us under Chapter 394 and, accordingly, disposed of the issues presented on appeal. In discussing the incongruous situation as to the Fund's status, we said: "However, this dilemma is for legislative, not judicial correction." *Id.*

Again, the Legislature responded by enacting Chapter 551 of the Laws of 1974. The Act stated that its purpose was to provide that no award could be made against the Fund by the Commission or by any court unless the Fund is a party to the proceeding. The body of the statute complied with the stated purpose and required the Fund to be a party to any proceeding in which an award was rendered against it. Act of April 30, 1974, Ch. 551, 1974 Md. Laws 1882. Even more importantly, it added to section 66 of Article 101 a provision that reads:

> The Fund may be impleaded at any stage of the proceedings, either before the Commission, or on appeal; but if impleaded on appeal from the decision of the Commission or on further appeal to the Special Court of Appeals [Court of Special Appeals], the court shall suspend further proceedings and remand the case to the Commission for further proceedings in order to afford the fund an opportunity to defend the claim.

Act of April 30, 1974, Ch. 551, 1974 Md. Laws 1882.

It is clear that by directly specifying that the Fund was to be a party the Legislature did not intend that the Fund's status as a party was to be in any way limited in its ability

to act as a party, *i.e.*, to raise and assert defenses. The last phrase of the 1974 Act requires that, when the Fund is impleaded during a court stage, the proceedings must be suspended and remanded *to the Commission* so that the Fund can defend the claim. To argue that, while on remand after being impleaded at the court level, the Fund can defend the action but if impleaded prior to the court stage it cannot, is to argue an absurdity. In statutory construction, absurd results are to be avoided. The Court of Appeals stated in *D & Y, Inc. v. Winston*, 320 Md. 534, 538, 578 A.2d 1177 (1990), that "construction of a statute which is unreasonable, illogical, unjust, or inconsistent with common sense should be avoided." (Citations omitted.) *See also Blandon v. State*, 304 Md. 316, 319, 498 A.2d 1195 (1985) (rules of statutory construction require us to avoid construing a statute in a way which would lead to absurd results); *Erwin and Shafer, Inc. v. Pabst Brewing Co., Inc.*, 304 Md. 302, 311, 498 A.2d 1188 (1985) (a court must shun a construction of a statute which will lead to absurd consequences); *Comptroller of the Treasury v. Fairchild Industries, Inc.*, 303 Md. 280, 284, 493 A.2d 341 (1985) (statute should not be construed by forced or subtle interpretations).

The Legislature's 1974 enactment established the Fund's status as a party by affording it the right to defend against the claim.[3] Section 66(5) of Article 101 further provides that in any case *before* the *Commission* when the Fund is impleaded the fund may hire any experts necessary to "defend the action." (Emphasis added.) As to court actions, Maryland Rule 1–202 provides that " 'Action' means collectively all the steps by which a party seeks to enforce any right in a court. . . ." Thus, an "action" before the Commission means all of the proceedings necessary to

---

**3.** Had the Legislature given the Fund a right to raise a specific defense or defenses then an inference could be made that those defenses not specified were excluded under the maxim *expressio unius est exclusio alterius*. The Fund, however, was given a general, not specific, right to defend.

enforce or to defend against a claim, not just the steps necessary to defend against or assert part of a claim.

The Court of Appeals in *Anchor Motor Freight, Inc. v. Subsequent Injury Fund*, 278 Md. 320, 325, 363 A.2d 505 (1976), citing its previous case of *Subsequent Injury Fund v. Thomas*, 275 Md. 628, 632, 342 A.2d 671 (1975), restated the three prerequisites for compensation from the Fund. They are: (1) a permanent injury from a previous accident or disease; (2) a subsequent compensable disability from a subsequent injury; and (3) the combined disability must be more than 50% and substantially greater than that resulting "from the subsequent injury alone."

Maryland Code Article 101, section 56(a) provides in pertinent part that the word "person" as used in the statute includes the Fund and that no award can be made against the Fund unless it is a party and represented by counsel. No limitation on its status as a party is contained in or implied by the statute. Section 40 provides that upon application of either party, the Commission "shall order a hearing." Obviously, the Fund, prior to being impleaded, cannot request a hearing. Sections 40, 56 and 66 appear to afford to the Fund all the rights of a party when impleaded. Thus, the Fund, upon being impleaded, has the right to request a hearing. The purpose of the hearing contemplated by the statute is to permit the relevant matters to be litigated. Prior conduct of other parties who are, or may be, in an adversarial relationship cannot estop the Fund from full participation as a "party" entitled to raise defenses at that hearing or any subsequent proceedings.

It is thus clear, reading Maryland Code Article 101 as a whole, and especially considering the legislative history of the amendments to Sections 56 and 66, that the Legislature intended that the Fund be a complete party in those cases in which its liability for compensation is at issue. *See Subsequent Injury Fund v. Chapman*, 11 Md.App. 369, 375, 274 A.2d 870, *aff'd*, 262 Md. 367, 277 A.2d 444 (1971). As we perceive them, the terms "party," "person," "defend the action," and "afford the Fund an opportunity to defend the

claim" are unambiguous. "[W]ords of the statute are deemed to be used in their ordinary and popular sense." *Thomas*, 275 Md. at 632, 342 A.2d 671 (citations omitted). The terms in no way, in and of themselves, conflict with any other terms or provisions of the Act. They merely permit the Fund to exercise the full right to defend against a claim.

While it is correct to state that the Workers' Compensation Act is to be construed liberally in favor of injured employees, "this does not mean that the Act should be construed to provide for compensation beyond that authorized...." *Thomas*, 275 Md. at 635, 342 A.2d 671. The Act requires that the Fund be impleaded as a person and party to defend against the claim or action before any award can be made against it. The existence of a subsequent accident and a causal connection are prerequisites for establishing the Fund's liability. To hold that the Fund is not entitled to challenge the conditions precedent to a claim against it would be to make meaningless the Legislature's granting to the Fund status as a party with an opportunity to defend. It is clear that when the Legislature conferred party status on the Fund it was as a full, not a titular, party.

On the two occasions where the courts have issued holdings limiting the rights of the Fund to be a full party the Legislature has responded by statute clarifying that its intentions were, and are, that the Fund have full rights as a party. (*Subsequent Injury Fund v. Pack, supra,* modified by Chapter 394 of the Acts of 1969; *Subsequent Injury Fund v. Howes, supra,* modified by Chapter 551, Acts of 1974.) "In determining ... legislative intent, the court may consider the statute's legislative history...." *Montgomery v. State*, 292 Md. 155, 159, 438 A.2d 490 (1981).

The interpretation urged upon us by the appellant would result, and apparently has resulted, in a situation where claimants and employers could, by failing to implead the Fund at an early stage and by either reaching a settlement between them or by an employer's failure to file issues, foreclose to the Fund an opportunity to assert some of its

defenses. It is certainly beneficial to the employee at that stage to resolve the accidental injury/causal connection issues without the presence of another adversarial party— the Fund.

The claimant, the employer, and the Commission have the right to implead the Fund. If the timing of that impleading requires issues to be relitigated, it is through no fault of the Fund. The necessity for relitigation is, under those circumstances, caused by the failure of the other parties or the Commission to implead the Fund at an earlier stage.

Accordingly, we hold that when the Subsequent Injury Fund is impleaded at any stage of a proceeding pursuant to Maryland Annotated Code article 101, sections 56 and 66, it has the right to assert a complete defense to the claim against it, including raising the issues of accidental injury and causal connection.[4]

■ We shall next address Claimant's other question— the issue of equitable estoppel. In addressing this question,

---

4. We have found a line of cases from one foreign jurisdiction where a Fund was held not to have the right to raise defenses. The Colorado Court of Appeals in *Sears, Roebuck & Co. v. Baca,* 670 P.2d 1244 (Colo.App.1983), and in *Black Mountain Spruce, Inc. v. Johnson,* 670 P.2d 1241 (Colo.App.1983), held that the Subsequent Injury Fund was not a legal entity and did not have the capacity to sue and be sued. It affirmed its holding in its subsequent case of *St. Thomas More Hosp. v. Indust. Comm'n,* 674 P.2d 993 (Colo.App.1983). The Colorado Court of Appeals' opinions that the Fund was not a legal entity and thus not capable of suing and being sued were later upheld by the Supreme Court of Colorado in *Subsequent Injury Fund v. Black Mt. Spruce,* 682 P.2d 1188 (Colo.1984).

The initial Colorado case, *Sears,* involved an attempt by the employer to "implead" the Fund. The Court held that "the ... Act contains no indication that the fund exists as a juridical personality." *Sears,* 670 P.2d at 1246. It then held that the "[statute] evidences the. legislative intent that the subsequent injury fund be nothing more than a bookkeeping account carried on the books of the state treasurer." *Id.* It then cited as authority the Maryland case of *Subsequent Injury Fund v. Pack,* 250 Md. 306, 242 A.2d 506 (1968), saying, "the Maryland Supreme [sic] Court ... said: '[The Fund] is actually nothing more than a glomerate of money.... It is not a commission ... or [a] person.'" *Id.* 670 P.2d at 1246. As we have said, the Maryland Court of Appeals' holding in *Pack* was legislatively abrogated by subsequent amendments to the Maryland act.

we first note that we have been directed to no Maryland cases on this issue and know of no Maryland precedent holding that the Fund would be estopped from raising defenses under circumstances similar to those in this case. Secondly, we discern that, to us, Claimant poses the question with a flawed ingredient, *i.e.*, that the Fund is "in the same equitable shoes" as the Employer. For the reasons that follow, that simply is not correct.

Initially, the statute provides that the employer is responsible for compensating that part of the disability caused by the subsequent injury. Md.Ann.Code art. 101, § 66(1) (1985 & Supp.1990). Whether the Fund is impleaded does not in and of itself affect the employer's liability. An employer who has previously not contested the existence of an accidental injury or the causal connection and thus is liable for compensation relative to the subsequent injury remains liable to the same extent unless that issue is reopened by the Commission. The Fund's assertion of defenses need not be automatically attributable to the employer, though it may be if the Commission chooses to reconsider under Section 40(c). The Commission's authority to reopen does not necessarily depend upon the impleading of the Fund. In no event is the Fund ever liable for that portion of the disability attributed to the subsequent injury. Md.Ann. Code art. 101, § 66 (1985 & Supp.1990). If the Fund prevails, all that remains for compensatory purposes is that degree of disability attributed solely to the subsequent accident.[5] From the inception of the claim, the employer, and only it, was liable for the subsequently caused disability, if any. Likewise, the employer is not, and never was, liable for the disability attributable to the pre-existing accident or disease.[6] The Fund should not be affected to its

---

5. The Fund may prevail for reasons other than lack of subsequent accidental injury.

6. "[T]he employer ... shall be liable only for the compensation payable ... for such [subsequent] injury.... [In cases of death,] the employer ... shall be liable for the compensation ... reasonably

detriment by the employer's lack of diligence in contesting the subsequent accidental injury; nor should the claimant benefit by the timing of the impleading of the Fund. The Fund and the employer, under these circumstances, do not stand in each other's shoes.

We have been cited to no authority and we have found none elsewhere squarely on point involving a Subsequent Injury Fund (or its equivalent). Reversing an intermediate appellate court that had held that a statute put a statutory employer [7] "into privity with the immediate employer", *Race Fork Coal Co. v. Turner*, 363 S.E.2d 423, 426 (Va. App.1987) [8], the Supreme Court of Virginia in *Race Fork Coal Co. v. Turner*, 237 Va. 639, 379 S.E.2d 341 (1989), stated: "We are faced with an adjudication of which the defendant had no notice and, therefore, no opportunity to defend." *Id.* at 343. The Fund, in the case at bar, likewise had no notice of the prior hearing and thus no opportunity to defend itself. The Virginia Supreme Court then noted that the interest of the statutory employer and immediate employer (like the relationship between the Fund and the employer in Maryland) were "not sufficiently identical in interest to regard the employer as representing all of the legal rights and defenses the statutory employer may have against the claimant." *Id.* It then concluded:

> Because the rules of privity bind a non-party . . . and thus implicate due process, their application does not turn upon the merits of a possible defense but upon the

attributable to the subsequent accidental injury...." Md.Ann.Code art. 101, § 66(1) (1985 & Supp.1990).

**7.** A Virginia "statutory employer" is defined to include an employer who contracts with an employee's immediate employer for that immediate employer to perform some part of the statutory employer's "trade, occupation or business." *See* Va.Code Ann. § 65.1–30 (1987 & Supp.1991) and the annotations thereto.

**8.** The statute at issue in the present case expressly confers upon the Fund party status and a right to defend. In doing so, it implicitly rejects the concept of privity that would bind the Fund to the employer's defense—or lack thereof. Any statutory privity on this point is conspicuously absent from the Maryland statute.

constitutional *right* to notice enabling one to make a defense.

*Id.* (Citations omitted, emphasis in original.) *See also Blagg v. Illinois F.W.D. Truck,* 186 Ill.App.3d 955, 134 Ill.Dec. 787, 542 N.E.2d 1294 (2d Dist.1989), *aff'd,* 143 Ill.2d 188, 157 Ill.Dec. 457, 572 N.E.2d 920 (Ill.1991).

Article 101, sections 39 and 40, provide that defenses may be raised past the period of limitations when the failure to file a claim is induced by fraud or by circumstances amounting to fraud. It then provides for an additional period in which to file claims after which the defenses of fraud and estoppel "cease to operate." Section 65 estops an insurance carrier from asserting certain defenses not relevant to the case at bar. We have been directed to no other sections of the statute creating estoppel defenses and know of none. The statute neither provides for nor implies that the Fund can be estopped from asserting defenses by the actions of others in prior stages of a proceeding.

We shall, therefore, direct our attention to the general concepts of equitable estoppel and collateral estoppel. The Court of Appeals opined in *Wright v. Wagner,* 182 Md. 483, 492, 34 A.2d 441 (1943), that: "An equitable estoppel operates to prevent a party from asserting his rights under a general technical rule of law, when he has so conducted *himself* that it would be contrary to equity and good conscience for him to do so." (Emphasis added, citations omitted.) The Court of Appeals in *Impala Platinum Ltd. v. Impala Sales (U.S.A.), Inc.,* 283 Md. 296, 389 A.2d 887 (1978), reiterated the validity of equitable estoppel as a defense, and, defining it, said:

> The Court has upheld and consistently applied the definition of equitable estoppel contained in 3 J. Pomeroy, Equity Jurisprudence § 804 at 189 (5th ed. 1941):
>
> "Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another per-

son, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy." Mere silence will generally not raise an estoppel against a silent party. "[T]he doctrine is only applicable when there is a duty imposed upon the party remaining silent to speak...."

*Id.* at 322–23, 389 A.2d 887 (citations omitted).

The Court of Appeals in *Chertkof v. Philadelphia, B. & W. R.R.,* 254 Md. 557, 255 A.2d 14 (1969), said: "An essential element of estoppel is that the person sought to be estopped must be guilty of some wrongful or unconscientious conduct, on which the other party has relied and been misled to his injury." *Id.* [234 Md.] at 532 [200 A.2d 166].

*Id.* at 570, 255 A.2d 14 (quoting *Food Fair Stores, Inc. v. Blumberg,* 234 Md. 521, 532, 200 A.2d 166 (1964)). *See also Salisbury Beauty Schools v. State Bd. of Cosmetologists,* 268 Md. 32, 62–63, 300 A.2d 367 (1973); *Rubinstein v. Jefferson Nat'l Life Ins. Co.,* 268 Md. 388, 393, 302 A.2d 49 (1973); *Agnew v. State,* 51 Md.App. 614, 657–58, 446 A.2d 425, *cert. denied,* 294 Md. 441 (1982). We said in *Dixon v. Process Corp.,* 38 Md.App. 644, 658, 382 A.2d 893, *cert. denied,* 282 Md. 731 (1978), that "[u]nless the party against whom the application of the doctrine is sought has been blameworthy 'of some unconscientious, inequitable or fraudulent act of commission or omission upon which another has relied and been misled to his injury, the doctrine will not be applied.'" (Citations omitted.) We also opined in *Dixon* that in addition to the requirement that the party being estopped has to have done some wrong, the other person claiming the estoppel must have in good faith relied upon the conduct and been led to change their position for the worse. *Id.* See also the custody case of *Knill v. Knill,* 306 Md. 527, 510 A.2d 546 (1986), where the Court said: "The voluntary conduct ... of the party to be estopped must give rise to the estopping party's reliance and, in turn,

result in detriment to the estopping party." *Id.* at 535, 510 A.2d 546. Claimant in the present case has not and does not assert that the Fund has acted in any improper way or is otherwise "blameworthy" or that he changed his position in any way as a result of the failure of Insurer to initially contest the issue of accidental injury.[9]

▆ The Court in *Mason v. Dulaney*, 144 Md. 108, 112, 124 A. 390 (1923), restated the doctrine of estoppel by silence enunciated in *Carroll v. Manganese Safe Co.*, 111 Md. 252, 258, 73 A. 665 (1909), saying it was applicable "where a person who by force of circumstances is under a duty to another to speak, refrains from so doing and thereby leads the other to believe in the existence of a state of facts in reliance upon which he acts to his prejudice." We have also declared: "Mere silence will generally not raise an estoppel against a silent party." *Sav-A-Stop Services, Inc. v. Leonard*, 44 Md.App. 594, 599, 410 A.2d 603 (1980), *aff'd*, 289 Md. 204, 424 A.2d 336 (1981) (quoting *Impala Sales*, 283 Md. at 323, 389 A.2d 887). We said in *Nazario v. Washington Adventist Hosp., Inc.*, 45 Md.App. 243, 245–46, 412 A.2d 1271, *cert. denied*, 288 Md. 740 (1980): "Equitable estoppel is applicable only where there is a duty imposed upon the party remaining silent to speak. The statute [art. 101] imposes no duty on the insurance company to inform appellant that it would make a claim and the company did not know of any lack of knowledge in the appellant as to its rights, thus the estoppel argument fails." (Citations omitted.) *See also Eastern Shore Warehousing, Inc. v. Wallis*, 87 Md.App. 141, 149, 589 A.2d 497 (1991).

Under the statutory scheme contained in Maryland Annotated Code article 101 generally, and in sections 56 and 66 specifically, the Fund becomes a party only when impleaded. It is the impleading of the Fund that gives it the opportunity to defend the claim. Prior to its impleading, it has no duty. It is silent because it has no right to speak.

---

**9.** The result we reach in the case at bar would not be affected even if such a change in position had been alleged.

We hold that when the Fund is impleaded it cannot be equitably estopped from raising defenses by reason of the actions of others occurring prior to the impleading of the Fund, nor is it estopped by reason of its prior silence in that, in the first instance, it had no right or duty to speak.

The Fund likewise is not collaterally estopped from raising such defenses. In *Washington Suburban Sanitary Comm'n v. TKU Assocs.*, 281 Md. 1, 18–19, 376 A.2d 505 (1977), that Court said that collateral estoppel required four essentials:

1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?

2. Was there a final judgment on the merits?

3. Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?

4. Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

Judge Wilner, now Chief Judge, for this Court in *Klein v. Whitehead*, 40 Md.App. 1, 12, 389 A.2d 374, *cert. denied*, 283 Md. 734 (1978), described the doctrines known as *res judicata*, collateral estoppel, and collateral attack on judgments, saying: "These three doctrines, though related, are different; they apply in different circumstances and they prevent different things." He defined *res judicata* and collateral estoppel as branches of estoppel by judgment with *res judicata* being a direct estoppel and collateral estoppel "is what its name says it is." *Id.* at 13, 389 A.2d 374. After discussing the relative differences between the doctrines, he opined: "For either to apply, the second action must be between the same parties or those in privity with them." *Id.* at 15, 389 A.2d 374. See also *Murray Int'l Freight Corp. v. Graham*, 315 Md. 543, 555 A.2d 502 (1989), that involved the subsequent assertion by an employer that a freight hauler was not its employee despite a previous Commission finding to the contrary. The Court opined that the collateral estoppel doctrine did not apply based partly on

its determination that the party against whom estoppel was asserted could not have appealed from the prior Commission decision. *Id.* at 552–53, 555 A.2d 502.

In the case *sub judice,* the Fund and Insurer are not the same parties. Neither, as we have explained, are they in privity with each other, nor did the Fund have notice of the prior proceeding, the opportunity to participate in it, or could it have appealed therefrom. Thus, the doctrine of collateral estoppel, even if its other requirements were met, does not apply.

 We, likewise, hold that Insurer is not estopped as a matter of law from raising accidental injury and "causal connection" issues if the Commission chooses to reopen this matter pursuant to Maryland Annotated Code, article 101, section 40(c). We find our recent case of *Suber v. Washington Metro. Area Transit Auth.,* 73 Md.App. 715, 536 A.2d 142 (1988), illustrative of the nature of reopening proceedings. The general factual situation was similar to that in the case at bar though the specifics were not. The employee, Suber, there argued that the employer was estopped from asserting a claim because it had paid Suber temporary total disability benefits prior to an award by the Commission and had waited two months after the award to raise issues.[10] We said that "acceptance of appellant's [Suber's] position would present the anomalous situation in which one who has been unjustly enriched can parlay that unjust enrichment into an irrevocable right." *Id.* at 726, 536 A.2d 142. We held that, merely because it had paid temporary total benefits before the award and had not timely filed issues, the employer did not "as a matter of law, waive its right, and is not estopped, to contest appellant's claim." *Id.* Article 101, section 40(c) confers continuing jurisdiction on the Commission to modify or change its former findings. Its only limitations provision requires

---

**10.** In the case at bar, Insurer waited almost seven years to file issues.

applications for modifications to be made within five years of the last payment of compensation. In *Suber*, we described the reopening statute:

> This provision is exceedingly broad, indeed, it is "one of the broadest re-opening statutes", which, "not only gives the Commission continuing jurisdiction over each case, [but] it also invests the Commission with blanket power to make such changes [in its former findings or orders] as in its opinion may be justified." It authorizes the Commission to reopen a case for the purpose of reconsidering an issue already decided, even in the absence of a change of facts or newly discovered evidence. Because, "[i]n a real sense, § 40(c) gives the Commission a revisionary power akin to that available to courts under Md.Ann.Code Courts article § 6–408, and Maryland Rule 625a. [present Rule 2–535], but without the thirty day limitation," it is clear that the Commission is not "irrevocably bound by its earlier findings."

*Id.* at 720–21, 536 A.2d 142 (footnote omitted) (citations omitted) (bracketed material in original). *See also Anchor Motor Freight, Inc. v. Subsequent Injury Fund*, 278 Md. 320, 328, 363 A.2d 505 (1976).

## Remaining Fund Issues

█ We, in our resolution of the questions presented by Claimant, have resolved the question and all of the arguments raised by the Fund except for its argument that the lower court abused its discretion in fashioning what it viewed to be an equitable result. The Fund states that the trial court, after determining that Employer/Insurer "should be estopped from contesting its liability," believed that it only had two options: (1) to afford to Employer/Insurer "the benefit of the Fund's diligence" or (2) to award full benefits to Claimant thus unfairly subjecting the Fund to liability. The Fund asserts, however, that the court overlooked a third possibility, *i.e.*, holding Employer/Insurer liable for the percentage of disability caused by the subsequent accident while precluding recovery from the Fund because it prevailed in its defense of the claim.

Because we have held that the Fund cannot be equitably estopped from raising the issues of accidental injury and causal connection, it necessarily follows that the trial court abused its discretion when it found that the Fund had the right to raise the defenses but that it could not do so because it was precluded from using "its late arrival as a 'Trojan Horse' within which the Employer/Insurer may place itself to bring down the Claimant's legitimately constructed benefit fortress." [11] It then opined that the Fund and Insurer were equitably estopped from denying the claimant the "benefit of the original Order finding accidental injury." The trial court was incorrect.

Maryland Annotated Code article 101, section 56(a) specifies the function of the trial court in appeals from the determinations of the Commission. It specifies that the court

"shall determine whether the Commission has justly considered all the facts concerning the injury, whether it has exceeded the powers granted it by the article, and whether it has misconstrued the law and facts applicable in the case decided. . . . If the court shall determine that the Commission has acted within its powers and has correctly construed the law and facts, the decision of the Commission *shall* be confirmed. . . ." (Emphasis added.)

Section 56(c) additionally states that in "all court proceedings . . . the decision of the Commission shall be prima facie correct. . . ."

---

**11.** We fail to see any similarity between the hollow horse left by the consolidated Greeks, as a contrived sacrifice to Athena, upon their pretended abandonment of the siege of Troy, and the assertion by the Fund in the case at bar of its defenses. Had equitable estoppel existed during the Trojan War it may have estopped Agamemnon, Menelaus and perhaps Helen, and those in privity with them. It would not have estopped others from entering Troy after the city was plundered and burned. In any event, "the clean hands doctrine" may have foreclosed the Trojans' reliance on equitable estoppel because the controversy there began with the kidnapping of Helen by Paris, the son of the Trojan king, Priam.

Our careful reading of the trial court's memorandum opinion and order discloses that the trial court found that the Commission acted within its powers and had correctly construed the facts and the law as they related to the Fund. At that point, the trial court had no choice but to deny claimant's motion for summary judgment. Its attempt to fashion some type of hybrid solution to what it perceived as a bad result exceeded its authority. It was thus an abuse of discretion. Accordingly, we shall reverse the trial court's order granting Claimant's motion for partial summary judgment as to the Fund and Employer/Insurer.

### Remaining Insurer Issues

Insurer has also alleged on appeal that the trial court erred in granting a partial summary judgment in favor of Claimant because the Motion was procedurally defective and insufficient on its merits. It is unnecessary to address these additional issues. As we have said above, the trial court exceeded its statutory authority in partially granting Claimant's motion for summary judgment. For the reasons we have stated, we shall reverse the order of the trial court.

JUDGMENT REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY APPELLEE/CROSS–APPELLANT EHRMAN.