## CARL M. TEAYS v. SUPREME CONCRETE BLOCK, INC. ET AL.

[No. 864, September Term, 1981.]

*Decided March 4, 1982.*

The cause was argued before THOMPSON, LOWE and BISHOP, JJ.

*Eugene B. Benson,* with whom was *Elizabeth Renuart* on the brief, for appellant.

*Russell R. Marks,* with whom were *Mackley, Gilbert & Marks* on the brief, for appellees.

LOWE, J., delivered the opinion of the Court.

The appellant, Carl M. Teays, sued his former employer Supreme Concrete Block, Inc., (and its manager) for wrongfully discharging him from its employment. The defendants (appellees here) demurred on the ground:

> "That the Declaration fails to make out a cause of action cognizable in Maryland. Specifically, in Maryland an employment contract which is for an indefinite term may be terminated at will by either party, without regard to the reasons for such termination."

Finding the law of Maryland to be as alleged, Judge John P. Corderman sustained the demurrer in the Circuit Court for Washington County on June 23, 1981, without leave to amend. He was right.

Before the time expired during which that final judgment could be appealed, however, the Court of Appeals judicially enacted a comparable cause of action for Maryland, recognizing that it was adopting anew an extension of the common law theretofore unrecognized in Maryland. On July 16, 1981, the Court decided *Adler v. American Standard Corp.,* 291 Md. 31, holding that at least from that date on

> "Maryland does recognize a cause of action for abusive discharge by an employer of an at will employee when the motivation for the discharge contravenes some clear mandate of public policy. . . ." *Id.* at 47.

On July 17, 1981 Mr. Teays appealed, citing substantial authority to support his claim that despite the correctness of the judgment below at the time it was rendered, he is entitled to the application on appeal of the new law.

In his usual careful and exhaustive manner, our former Chief Judge Orth examined that principle in *Firstman v. Atlantic Constr. & Supply,* 28 Md. App. 285 (1975). Quoting from *Yorkdale v. Powell,* 237 Md. 121, 124 (1964), decided by

the Court which he was destined to join, Judge Orth noted in *Firstman* that:

> " 'Maryland consistently has followed the rule that 'an appellate court is bound to decide a case according to existing laws, even though a judgment rightful when rendered by the court below should be reversed as a consequence,' as Judge Markell, for the Court, repeated in *Woman's Club v. State Tax Comm.*, 195 Md. 16, 19 (or, it may be noted, even when a judgment wrong when rendered is made right by the change in the law). See also for this proposition that a change in the law after a decision below and before final decision by the appellate Court will be applied by that Court unless vested or accrued substantive rights would be disturbed or unless the legislature shows a contrary intent, *Keller v. State,* 12 Md. 322; *Day v. Day,* 22 Md. 530; *Gordy v. Prince,* 175 Md. 688; *Cockerham v. Children's Society,* 185 Md. 97; and *Tudor Arms Apts. v. Shaffer,* 191 Md. 342.' " *Id.* at 296-297.

Caught midstream, appellees were forced to change horses, despite President Lincoln's admonition to the contrary. Compelled to acknowledge the *Firstman* concept, they orally, and unconvincingly, argued to us that the concept of entitlement to a change in the law should be restricted to statutory or rules changes. Somehow, it seems, they find a difference when the Court of Appeals changes the common law. They contend that none of the cases referred to by appellant, or presumably in *Firstman,* apply when the common law is changed by the Court.

But even that argument is not entirely correct. In *Pope v. State,* 284 Md. 309 (1979), the Court of Appeals acknowledged that we were correct in concluding that misprision of felony was a common law crime which thereby became part of Maryland law. It then assumed its prerogative to change the common law, and abolished that common law crime in Maryland. Notably, Mrs. Pope, who had been convicted of that crime, was given the benefit of the change made at her

final level of appeal. Her conviction was reversed. A similar accord was provided in *McClain v. State,* 288 Md. 456, 470 (1980), where Judge Smith explained the concept on the principle of fundamental fairness:

"We have no constitutional question in this case. However, we believe that the legal principles enunciated by Justices Douglas, Harlan, Marshall, Powell, and Stevens more nearly conform with fairness and traditional Maryland holdings than would a determination that *Johnson* [*v. State,* 282 Md. 314 (1978)] is not applicable to this case. As Mr. Justice Cardozo said for the Court in *Great N. Ry. v. Sunburst Co.,* 287 U.S. 358, 365, 53 S.Ct. 145, 77 L. Ed. 360 (1932), 'The choice for any state may be determined by the juristic philosophy of the judges of her courts, their conceptions of law, its origin and nature. . . . In making this choice, she is declaring common law for those within her borders.' In our view it would be unjust and unfair to hold that Johnson, who raised an issue, is to have the benefit of the holding in his case, but McClain, who raised the same issue, is not to have the benefit of that holding. It makes fish of one and fowl of the other. It simply does not comport with the American tradition of equal justice under the law. We hold that *Johnson* is applicable to McClain's case."

See also *Williams v. State,* 292 Md. 201 (1981). Certainly, if a convicted murderer, and one who suppressed knowledge thereof, are entitled to the "fundamental fairness" of a retrospective application of the changed common law concept, an ordinary citizen untainted by criminality should receive commensurate consideration.

While we will reverse the judgment of the circuit court, a further issue undecided below should be addressed for the guidance of that court to avoid a possible unnecessary appeal. Md. Rule 1085. *Adler* clearly indicated the necessity for a substantial degree of particularity in the allegations to

make out a cause of action for wrongful discharge. The Court found that *Adler* had himself failed to do so because his declaration, like the one conceded by appellant before us, was "too general, too conclusory, too vague and lacking in specifics to mount up to a prima facie showing", that the misconduct of which he complained contravened the public policy of this State. *Id.* at 44.

Despite the concession that the declaration here is insufficient in substance, we will remand the case for the trial judge to designate an appropriate time within which appellant may amend, in line with Maryland's liberal policy of allowing amendments. *Crowe v. Houseworth,* 272 Md. 481, 485 (1974). While the allowance of amendments is discretionary, to deny it in this case would be to deny the "fundamental fairness" that has impelled us to reverse in the first instance. Whether appellant can so amend, or whether his proposed amendments conform to the *Adler* requisites, is a matter we expressly refrain from deciding.

> *Judgment reversed.*
> *Case remanded to the Circuit Court for Washington County for further proceedings pursuant to this opinion.*
> *Costs to be divided equally between the parties.*