747 A.2d 697

WESTERN CORRECTIONAL INSTITUTION

v.

Jeffrey GEIGER.

No. 1827, Sept. Term, 1998.

Court of Special Appeals of Maryland.

March 6, 2000.

564

Michele J. McDonald, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for Appellant.

Lisa O'Mara (Davis and Associates, on the brief), Towson, for Appellee.

Argued before MURPHY, C.J., and DAVIS and VINCENT E. FERRETTI, Jr. (Specially Assigned), JJ.

MURPHY, Chief Judge.

■ Section 11–106 of the State Personnel and Pensions article provides, in pertinent part:

(a) *Procedure.*—Before taking any disciplinary action related to employee misconduct, an appointing authority shall:

 (1) investigate the alleged misconduct;

 (2) meet with the employee;

 (3) consider any mitigating circumstances;

 (4) determine the appropriate disciplinary action, if any, to be imposed; and

 (5) give the employee a written notice of the disciplinary action to be taken and the employee's appeal rights.

(b) *Time limit.*—Except as provided in subsection (c) of this section an appointing authority may impose any disciplinary action no later than 30 days after the appointing authority acquires knowledge of the misconduct for which the disciplinary action is imposed.

*Id.*[1] This appeal from the Circuit Court for Allegany County presents the question of when the appointing authority *acquires knowledge* for purposes of triggering the time period within which disciplinary action must be initiated. For the reasons that follow, we are persuaded that (1) the limitation period is triggered by knowledge that is sufficient to justify

---

**1.** Subsection (c) concerns the time limits for time limit by which suspensions without pay must be imposed and is not at issue in the instant case. Thus, when the term *disciplinary action* is used herein, it specifically excludes suspensions without pay in its contemplation of sanctions for misconduct.

the appointing authority's decision to initiate disciplinary action; (2) when the disciplined employee makes a *prima facie* showing that the appointing authority has failed to comply with the limitation period provided for by § 11–106(b), the appointing authority must prove by a preponderance of evidence that this section was not violated; and (3) the appointing authority is prohibited from imposing disciplinary action more than 30 days after it has acquired—or, with the exercise of reasonable diligence, should have acquired—knowledge sufficient to justify taking disciplinary action against the employee.

## Background

Jeffrey Geiger, appellee, was employed as a level II Correctional Officer at the Western Correctional Institution ("WCI") in Cresaptown. Sometime in November or December of 1996, during a conversation with Regina Waites, a nurse at WCI, appellee invoked a racial epithet. On March 7, 1997, Nurse Waites reported appellee's language to Frank Sizer, Jr., WCI's warden and appointing authority.[2] At that point, Warden Sizer requested that the Division of Correction's Internal Investigations Unit ("IIU") conduct a formal inquiry into Nurse Waite's allegations, and he received IIU's completed investigation report on April 11, 1997. Warden Sizer then conducted a mitigation conference with appellee, during which appellee admitted having used the offensive language.[3]

On April 21, 1997, Warden Sizer prepared appellee's Notice of Termination and forwarded it to appellant for approval. The approved Notice was received by appellee on May 6, 1997. Appellee appealed to the State's Office of Administrative Hearings ("OAH"), arguing that his termination was untimely

---

**2.** Nurse Waites' explanation for the delay in reporting the alleged misconduct is of no consequence to this appeal.

**3.** According to Nurse Waites, appellee used the term in an extremely derogatory manner, with the basest racial animus. According to appellee, he was simply using a term that was used on a regular basis by employees of the Maryland State Penitentiary at Jessup, where he had previously been employed.

because it was imposed more than 30 days after the appointing authority acquired knowledge of the misconduct. On December 16, 1997, Administrative Law Judge Michael J. Wallace rescinded appellee's Notice of Termination. Appellant then petitioned for judicial review of that ruling. The Circuit Court for Allegany County affirmed the OAH's decision, and this appeal followed.

## I.

### A. Legislative History of § 11–106

On June 9, 1995, Executive Order No. 01.01.1995 established the Governor's Task Force to Reform the State Personnel Management System (the "Task Force"). According to that Order, State government needed "a personnel management system that is more flexible, decentralizes personnel management functions, simplifies and streamlines personnel procedures and provides for the consistent application of personnel policies throughout a diverse State government." *Id.* To this end, the Task Force was charged with conducting a "comprehensive review of the Maryland State Personnel Management System contained in Division I of the State Personnel and Pensions Article to determine necessary and appropriate revisions to that law." *Id.*

The Task Force submitted a final report,[4] containing its findings and recommendations, to the Glendening Administration on January 19, 1996. That report included a proposal that the appointing authority be allowed "up to thirty calendar days to impose any [non-suspension] form of discipline." The Task Force's aggregate proposals were then presented to the General Assembly as the State Personnel Management Sys-

---

4. According to the final report, the Task Force held 23 sessions between June 14, 1995 and December 20, 1995, with in-depth examination of fifteen fundamental human resource management processes. Additionally, subcommittees provided for even more intense scrutiny and development of the changes that were ultimately debated and proposed by the Task Force. In arriving at its conclusions and recommendations, the Task Force solicited the involvement of private citizens, state employees, managers, and officials.

tem Reform Act of 1996 (the "Act").[5] The Act passed in substantially the same form that the Task Force had proposed. Thus, to the extent that the General Assembly relied on the efforts and recommendations of the Task Force, § 11–106(b) was intended as a limitation on the time in which discipline could be imposed by an appointing authority. The legislative history, however, does not reveal what either the Task Force or the legislature intended by its use of "knowledge of the misconduct for which the disciplinary action is imposed" as the triggering event for the period of limitation. To resolve this ambiguity, we must turn to the traditional methods of statutory construction.

### B. Statutory Construction of § 11–106

 The fundamental rule of statutory construction is that the reviewing court ascertain and effectuate as closely as possible the intent and purpose of the legislature. *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423 (1995). When, as is the case here, the plain language of the statute fails to reveal a particular intent, we look to the entire statutory scheme and consider the purpose of the particular statute before us. *Department of Pub. Safety & Correctional Serv. v. Howard,* 339 Md. 357, 369, 663 A.2d 74 (1995). Additionally, courts may examine any interpretive regulations promulgated by an administrative agency, giving deference to the agency's own application. *Baltimore & Ohio Ry. Co. v. Bowen,* 60 Md.App. 299, 305, 482 A.2d 921 (1984). Courts must also be cognizant of avoiding an illogical, absurd, or inconsistent result. *Kaczorowski v. Mayor and City Council of Baltimore,* 309 Md. 505, 512, 525 A.2d 628 (1987).

Our construction of the statute at issue should also be consistent with the agency regulations that implement the mandate of § 11–106. Under COMAR 17.04.05.04, the ap-

---

**5.** Senate Bill 466. An identical bill was offered in the House of Delegates as House Bill 774. Ultimately, it was the House Bill that was enacted as law. The language at issue in § 11–106 was identical in both the House and Senate proposals.

pointing authority "shall take each of the actions required in § D of this regulation within the time limits provided in State Personnel and Pensions Article, § 11–106, Annotated Code of Maryland." *Id.* The actions required in COMAR's provisions mirror those investigatory requirements of § 11–106(a). While an appointing authority has 30 days within which to impose discipline, the statute does not expressly identify the degree of knowledge that triggers this limitation period.

C. *Level of Knowledge Required to Trigger the 30–Day Period for Imposition of Disciplinary Action Under § 11–106*

■ We reject appellee's contention that the 30–day limitation period begins the moment that the appointing authority acquires any knowledge, however slight, of the incident for which disciplinary action is ultimately imposed. There is an important distinction between (1) information that indicates the necessity for an investigation, and (2) the completion of an investigation required by § 11–106(a)(1). The statutory clock found in § 11–106(b) does not start until the appointing authority has—or, in the exercise of reasonable diligence, should reasonably have—acquired enough knowledge to justify the imposition of discipline.

■ We are persuaded that when an appointing authority reprimands or terminates an employee, that decision is presumptively correct as to both substance and procedure. When, however, the employee produces evidence that generates the issue of whether the 30–day limit had been violated, the agency must prove by a preponderance of the evidence that the disciplinary action was timely imposed.

D. *Procedure for Determining Compliance with § 11–106(b)*

■ We therefore hold that, in accordance with the Act's goal of consistent application of statewide personnel policies and procedures, when a disciplined employee contends that the time limitation of § 11–106(b) has not been complied with,

the employee must overcome the presumption of correctness by making a *prima facie* showing that the appointing authority was "on notice" of the alleged misconduct more than 30 days before the disciplinary action was imposed. If the employee does succeed in showing, *prima facie*, that the appointing authority was on notice of the purported misconduct on a day more than 30 days before the employee was ultimately disciplined, the disciplinary action shall be rescinded unless the appointing authority proves by a preponderance of the evidence that (1) the investigation required by § 11–106(a)(1) was conducted with reasonable diligence, and (2) the disciplinary action at issue was imposed no later than 30 days after the required investigation had been completed.

*E. The Sanction for Non–Compliance with § 11–106(b)*

 It is true that § 11–106 does not expressly provide for the consequences of an appointing authority's non-compliance with the time limits set forth in the statute. When a statute that imposes a duty does not prescribe the consequences for a violation of that duty, the particular sanction must be within the spirit and purpose of the applicable law. *Lussier v. Maryland Racing Comm'n,* 343 Md. 681, 686–7, 684 A.2d 804 (1996). In examining § 11–106 within the context of the Act's overall statutory scheme, and as it relates to the agency's own implementing regulations, it appears that the prime reason for the addition of a limitation period in 1996, where none had existed before, was to provide protection to workers from the indefinite threat of investigation and discipline (other than suspension) for matters of misconduct.

 The legislative history shows that the General Assembly wished to limit the period of time in which the appointing authority could impose, for example, a reprimand or termination. The 1996 State Personnel Management System Reform Act was enacted to, *inter alia*, provide for a more consistent application of state-wide policies and procedures. That important goal is inconsistent with the proposition that a violation of § 11–106(b) can be excused whenever the appointing authority concludes that untimely disciplinary action is

justified by some overriding public policy. We therefore hold
that the appropriate remedy for an appointing authority's non-
compliance with § 11–106(b) is an order rescinding the disci-
pline imposed. To hold otherwise would render illusory the
protection provided to State employees by § 11–106(b).

## II.

■ From our review of the record in this case, we are
persuaded that (1) appellee made a *prima facie* showing that
the disciplinary action at issue was imposed more than 30 days
after the appointing authority had acquired knowledge of his
misconduct; (2) appellant utterly failed to prove that the
investigation in this case could not have been completed until a
date within 30 days of the date on which discipline was
imposed; (3) the Administrative Law Judge was correct in his
decision to rescind the order terminating appellant's employ-
ment; and (4) the circuit court's affirmance of that decision
was entirely correct.

**JUDGMENT AFFIRMED;**

**APPELLANT TO PAY THE COSTS.**