759 A.2d 1209

Stephanie SMACK

v.

DEPARTMENT OF HEALTH AND MENTAL HYGIENE.

No. 2385, Sept. Term, 1999.

Court of Special Appeals of Maryland.

Oct. 2, 2000.

414

Robin Cockey, Salisbury (John F. Conwell and Davis & Associates Law offices, P.A., on the brief), Towson, for Appellant.

James C. Anagnos, Staff Atty. (J. Joseph Curran, Jr., Atty. Gen. and David R. Morgan, Asst. Atty. Gen., on the brief), Baltimore, for Appellee.

Argued before MURPHY, C.J., and EYLER and ADKINS, JJ.

EYLER, Judge.

On February 9, 1998, the Department of Health & Mental Hygiene, appellee, terminated the employment of Stephanie Smack, appellant, a new employee with the Somerset County Health Department. Subsequently, on a petition for judicial review of the administrative decision, the Circuit Court for Worcester County affirmed. Appellant appeals to this Court and contends (1) that the Administrative Law Judge (ALJ) and the circuit court committed legal error in holding that Md.Code (1987), State Personnel & Pensions (State Pers. & Pens.) § 11–106, was not applicable to appellant, and (2) that the termination was based on racial discrimination.

### Facts

There is no dispute with respect to the relevant underlying facts. On October 8, 1997, appellant was employed by the Somerset County Health Department as a Social Worker I assigned to the Addiction Unit located in Westover, Maryland. Appellant was a new employee, and as such, was subject to a probationary period that would have expired on April 8, 1998.

As part of her duties, appellant assessed substance abuse problems, tested for substance abuse, and provided counseling. Appellant also provided weekly therapy to a group located in Crisfield, Maryland. The location of the group therapy session in Crisfield was approximately a ten-minute drive from appellant's office in Westover. Appellant was required to use her personal vehicle to drive to Crisfield for the sessions.

On January 29, 1998, appellant was scheduled to meet the group in Crisfield at 2:00 p.m. Flooding had been caused in the area by a major storm described as a "nor'easter." Appellant left Westover at 1:45 p.m.

When appellant neared the location of the session, she heard someone scream. The unnamed person advised appellant that (1) the street, presumably leading to the location, was under water, and (2) members of the group had not been able to make it because of the water. Appellant observed two vehicles having difficulty getting through a flooded area of the street and determined that her vehicle would not make it. Appellant testified that she "panicked" because of a radio report of a rising tide.

Appellant had no money with her to make a telephone call, and she returned to her Westover office. At that time, appellant obtained the phone number for the facility where the session was to meet and called, but she was unable to get through. Appellant did not report to her supervisor, Gail Lankford, that day. Ms. Lankford, another counselor from the Westover office, and three members of the group did attend the therapy session at the appointed hour.

On January 30, 1998, Ms. Lankford discussed the incident with appellant. On February 3, 1998, Ms. Lankford discussed the incident with Curtis Dixon, head of the County Health Department. Subsequently, Mr. Dixon decided to terminate appellant's employment. On February 9, 1998, appellant was notified that her employment would be terminated for failing to attend the group session and failing to report her absence to her supervisor.

Pursuant to Md.Code, State Pers. & Pens. § 11–110, appellant appealed the termination to the Office of Administrative Hearings on September 14, 1998. On March 8, 1999, the ALJ issued a decision affirming the termination of employment. Appellant filed a petition for judicial review in the Circuit Court for Worcester County, and on September 30, 1999, the circuit court affirmed appellee's decision to terminate appellant's employment.

## Questions Presented

As rephrased by us, appellant inquires on appeal whether (1) Md.Code, State Pers. & Pens. § 11–106 applies to appellant; and (2) whether the decision to terminate appellant was illegal or unconstitutional based on racial discrimination. For the reasons that follow, we answer both questions in the negative and affirm the judgment of the Circuit Court for Worcester County.

## Standard of Review

■ The proceedings before the ALJ were governed by the Administrative Procedure Act, Md.Code (1995 Repl.Vol. & Supp.1998), State Gov't §§ 10–201 to 10–226. Our role is the same as that of the circuit court. Consequently, we review the decision of the ALJ, not the decision of the trial court. *Pub. Serv. Comm'n v. Baltimore Gas & Elec. Co.*, 273 Md. 357, 362, 329 A.2d 691 (1974); *Consumer Protection Div. v. Luskin's, Inc.*, 120 Md.App. 1, 22, 706 A.2d 102 (1998), *rev'd in part on other grounds, Luskin's, Inc. v. Consumer Protection Div.*, 353 Md. 335, 726 A.2d 702 (1999), and we pay no deference to the legal conclusions of the ALJ. *See* Md.Code (1999), State Gov't § 10–222(h)(3); *Baltimore Lutheran High Sch. v. Employment Sec. Admin.*, 302 Md. 649, 662, 490 A.2d 701 (1985); *Maryland Sec. Comm'r v. United States Sec. Corp.*, 122 Md.App. 574, 587, 716 A.2d 290 (1998).

The issues presented in this case are issues of law. The parties do not contest any of the factual conclusions of the ALJ or inferences that may have been derived from those facts. The first issue presented for our review is simply

whether State Pers. & Pens. § 11–106 applies to appellant despite her status as a probationary employee and whether the ALJ and the circuit court committed legal error in concluding that it was not applicable.

### Discussion

#### 1.

Section 11–106(a), the pertinent subsection, provides:

*Procedure.*—Before taking any disciplinary action related to employee misconduct, an appointing authority shall:

(1) investigate the alleged misconduct;

(2) meet with the employee;

(3) consider any mitigating circumstances;

(4) determine the appropriate disciplinary action, if any, to be imposed; and

(5) give the employee a written notice of the disciplinary action to be taken and the employee's appeal rights.

The implementing regulation, entitled "Disciplinary Actions Relating to Employee Misconduct," appears in COMAR 17.04.05.04. Subsections (D) and (E) provide:

D. Before an employee may be disciplined for conduct-related reasons, the appointing authority shall:

(1) Notify the employee of the misconduct and provide an explanation of the employer's evidence;

(2) Investigate the alleged misconduct;

(3) Meet with the employee, unless the employee is unavailable or unwilling to meet;

(4) Consider any mitigating circumstances;

(5) Determine the appropriate disciplinary action, if any, to be imposed; and

(6) Give the employee written notice of the disciplinary action to be taken and the employee's appeal rights, and inform the employee of the effective date of the disciplinary action.

E. Unless otherwise provided by law, an appointing authority shall take each of the actions required in § D of this regulation within the time limits provided in State Personnel and Pensions Article, § 11–106, Annotated Code of Maryland.

Appellant asserts that these provisions were not complied with, a position not challenged by appellee, and because of the noncompliance, reversal is required.

■ We find no error and agree with the ALJ and the circuit court that appellant's termination was governed by § 11–303, which provides:

**Termination of probationary employee.**

(a) *Authorized.*—An appointing authority may terminate the employment of a probationary employee.

(b) *Notice.*—Before terminating an employee who is on probation, the appointing authority shall give the employee a notice of termination at least 10 days before the effective date of the termination.

(c) *Suspension during interim.*—An appointing authority may suspend a probationary employee with pay between the date of the notice and the effective date of the termination.

(d) *Appeal limited.*—A probationary employee may appeal a termination under this section only on the grounds that the termination is illegal or unconstitutional.[1]

---

1. At oral argument, appellant asserted that, even if a probationary employee's employment could be terminated at the discretion of the employer, nevertheless, § 11–106 would be applicable in this case because appellee in fact treated this as a misconduct case. We disagree.

The statute does not define misconduct, but it is clearly a concept distinct from lack of proficiency in employment, although the two could overlap. Appellee did not use the label or in any way assert "misconduct"; it simply gave a reason for the termination of appellant's employment, a reason consistent with lack of proficiency. It is immaterial whether the same conduct constitutes "misconduct" within § 11–106. We see no statutory prohibition against giving a reason for termination even if the right to terminate is discretionary. On the other hand, if appellee had chosen to comply with the procedures in § 11–106, even though not required to do so, it would not have violated the

### Statutory Construction

In dealing with an issue of statutory construction, our goal is to discern and effectuate the intent of the legislature at the time it enacted the statute. *Brown v. Housing Opportunities Com'n,* 350 Md. 570, 575, 714 A.2d 197 (1998). If the statutory language is clear, unambiguous, and consistent with the purposes of the legislation in general and the particular provision being interpreted, our inquiry usually ends at that point. *Philip Electronics North America v. Wright,* 348 Md. 209, 216–17, 703 A.2d 150 (1997); *Sears, Roebuck & Co. v. Gussin,* 350 Md. 552, 561–62, 714 A.2d 188 (1998). When, as is the case here, the plain language of the statute fails to reveal a particular intent, we look to the entire statutory scheme and consider the purpose of the particular statute before us. *Department of Pub. Safety & Correctional Serv. v. Howard,* 339 Md. 357, 369, 663 A.2d 74 (1995). Additionally, "we seek to discern the intent of the legislature from surrounding circumstances, such as legislative history, prior case law, and the purposes upon which the statutory framework was based." *Philip Electronics,* 348 Md. at 217, 703 A.2d 150. Courts also may examine any interpretive regulations promulgated by an administrative agency, giving deference to the agency's own application. *Baltimore & Ohio R.R. Co. v. Bowen,* 60 Md.App. 299, 305, 482 A.2d 921 (1984). Courts must also be cognizant of avoiding an illogical, absurd, or inconsistent result. *Kaczorowski v. Mayor and City Council of Baltimore,* 309 Md. 505, 513, 525 A.2d 628 (1987)(citing *Tucker v. Fireman's Fund Ins. Co.,* 308 Md. 69, 75, 517 A.2d 730 (1986)); *Williams v. State,* 329 Md. 1, 15, 616 A.2d 1275 (1992) (court interprets statutory language in light of full context in which it appears, and in light of external manifestations of legislative intent or general purpose available through other evidence); *Richmond v. State,* 326 Md. 257, 262, 604 A.2d 483 (1992)(quoting *Cunning-*

statute. The bottom line is that appellee did not comply with the procedures in § 11–106, and in our view of the case, it was not required to do so.

*ham v. State,* 318 Md. 182, 185, 567 A.2d 126 (1989)); *Dickerson v. State,* 324 Md. 163, 170–71, 596 A.2d 648 (1991).

### Statutory Scheme

■ An appellate court attempts to divine legislative intent from the entire statutory scheme, as opposed to scrutinizing parts of the statute in isolation. *Williams,* 329 Md. at 15–16, 616 A.2d 1275. Accordingly, we briefly explain the relevant statutory scheme.

The employment categories in the State Personnel Management System are (1) skilled service, § 6–401, (2) professional service, § 6–402, (3) management service, § 6–403, (4) executive service, § 6–404, (5) special appointees, § 6–405, and (6) temporary employees, § 6–406. Each employee is required to complete a six-month probationary period as the final step in an employee's initial appointment to a position in the State Personnel Management System. § 7–402. The parties agree that appellant was a probationary employee and her position was such that she would have been in the professional service category if a permanent employee.

> To successfully complete a probationary period, an employee is required to demonstrate proficiency in the assigned duties and responsibilities of the position to which the employee is appointed.

Section 7–402(c).

> An appointing authority may take disciplinary action against or terminate the employment of a probationary employee in accordance with Title 11 [of the State Pers. & Pens. article].

Section 7–405.

Title 11 of the State Personnel and Pensions Article is entitled "Disciplinary Actions, Layoffs, and Employment Terminations in State Personnel Management System." Of relevance here are subtitle 1, "Disciplinary Actions" and subtitle 3, "Employment Separations and Terminations." The language of both the title and subtitles indicate that "disciplinary actions" and "employment terminations" are distinct concepts.

Subtitle 1 is labeled "disciplinary actions" and applies to all employees in the State Personnel Management System within the Executive Branch except temporary employees. *See* § 11–102. Thus, subtitle 1 applies to probationary employees. The disciplinary actions permitted against any employee are set forth in § 11–104 and include a written reprimand, forfeiture of annual leave, and suspension. Disciplinary action also includes termination of employment. *See* § 11–104(7). Section 11–105 enumerates actions providing cause for automatic termination of employment. Section 11–106 outlines the procedure required before taking any disciplinary action related to employee misconduct. Section 11–107 identifies actions which do not constitute disciplinary action, which include counseling memoranda, leave without pay, and restitution.

Subtitle 3 of Title 11 is entitled "Employment Separations and Terminations," and applies to "all nontemporary employees in the State Personnel Management System." § 11–301. Section 11–303 specifically addresses the termination of a probationary employee.

Employees in the management service, executive service, or special appointment categories are "at will," and their employment may be terminated for any reason, § 11–305. The appeal rights of those employees are limited to an assertion that the termination was illegal or unconstitutional, § 11–113(b)(2)(ii). If a probationary employee does not successfully complete the probationary period and the employment is terminated, such employee's appeal rights are limited to an assertion that the termination was illegal or unconstitutional. Section 11–303(d). By contrast, employees in the skilled or professional service categories are not subject to such limited appeal rights. Section 11–109. Temporary employees are not covered by subtitle 1, *see* § 11–102, or subtitle 3, *see* § 11–301.

 "It is well settled that when two statutes, one general and one specific, are found to conflict, the specific statute will be regarded as an exception to the general statute." *Farmers & Merchants Nat'l Bank v. Schlossberg*, 306 Md. 48, 63, 507 A.2d 172 (1986); *see also Government Employees Ins. Co. v.*

*Insurance Comm'r,* 332 Md. 124, 135, 630 A.2d 713 (1993). While State Pers. & Pens. § 11–106 is a general statute that concerns "disciplinary action related to employee misconduct," State Pers. & Pens. § 11–303 specifically addresses the termination of probationary employees. Therefore, State Pers. & Pens. § 11–303 governs the procedure required under these circumstances, and the only procedural requirement is to give the requisite notice. *See* § 11–303(b). This conclusion is also supported by the legislative history and administrative regulations.

## Legislative History

As previously mentioned, when we seek to discern the intention of the legislature, we also consider legislative history and the purposes upon which the statutory framework was based. *See Philip Electronics,* 348 Md. at 217, 703 A.2d 150. In our recent decision, *Western Correctional Inst. v. Geiger,* 130 Md.App. 562, 747 A.2d 697 (2000), Chief Judge Murphy chronicled the legislative history relevant here:

On June 9, 1995, Executive Order No. 01.01.1995 established the Governor's Task Force to Reform the State Personnel Management System (the "Task Force"). According to that Order, State government needed "a personnel management system that is more flexible, decentralizes personnel management functions, simplifies and streamlines personnel procedures and provides for the consistent application of personnel policies throughout a diverse State government." *Id.* To this end, the Task Force was charged with conducting a "comprehensive review of the Maryland State Personnel Management System contained in Division I of the State Personnel and Pensions Article to determine necessary and appropriate revisions to that law." *Id.*

The Task Force submitted a final report, containing its findings and recommendations, to the Glendening Administration on January 19, 1996. That report included a proposal that the appointing authority be allowed "up to thirty calendar days to impose any [non-suspension] form of discipline." The Task Force's aggregate proposals were then

presented to the General Assembly as the State Personnel Management System Reform Act of 1996 (the "Act"). The Act passed in substantially the same form that the Task Force had proposed.

130 Md.App. at 567–68, 747 A.2d 697 (footnotes omitted).

According to the Task Force Recommendations pertinent to the issue before us:

**Terminations and Disciplinary Actions During the Probationary Period**

A. An employee may be disciplined during the probationary period for any reason and to any extent authorized by this article.

B. Notwithstanding the foregoing, at any time during the probationary period an appointing authority may terminate the employment of an employee if, in the judgement of the appointing authority, the employee is unable or unwilling to satisfactorily perform the duties or responsibilities of the position or the employee's conduct does not merit continued employment with the State.

. . . .

E. Except for an action taken [with regard to employees serving probation upon competitive promotion], a probationary employee shall only be entitled to grieve or otherwise appeal a disciplinary action on the basis that the action was illegal.

*See* Task Force to Reform the State Personnel Management System, Report to the Governor, at 14 (January 1996).

■ Thus, to the extent that the General Assembly relied on the efforts and recommendations of the Task Force, it appears the legislative intent was to treat a probationary employee as, in essence, an employee at-will and, consistent with that concept, limit a probationary employee's right of appeal.

## Administrative Regulations

 Courts also may examine any interpretive regulations promulgated by an administrative agency, giving deference to the agency's own application. *Baltimore & Ohio R.R. Co. v. Bowen,* 60 Md.App. 299, 305, 482 A.2d 921 (1984). Contemporaneous interpretation of a statute by an agency that administers it can guide, but not bind, an appellate court. *Board of Trustees v. Hughes,* 340 Md. 1, 8, 664 A.2d 1250 (1995)(quoting *Baltimore Gas & Elec. v. Public Serv. Comm'n,* 305 Md. 145, 161, 501 A.2d 1307 (1986)).

COMAR 17.04.03.17F, implementing State Pers. & Pens. § 11–303, provides in part:

> An appointing authority who terminates an employee under this subsection shall do so in accordance with State Personnel & Pensions Article, § 11–303, Annotated Code of Maryland. The appointing authority's notice to the employee shall be in writing with a copy to the Secretary. The appointing authority shall provide notice at least 10 days before the effective date of the termination. The notice shall state the reasons for the termination, the effective date, and the appropriate appeal route.

Again, the procedure with regard to termination of probationary employees is summary in nature and is regarded as distinct from other disciplinary actions.

## Prior Case Law and Interpretations

In seeking to discern the intention of the legislature, we may also consider prior case law. *See Philip Electronics,* 348 Md. at 217, 703 A.2d 150. Interpretations preceding the enactment of the current statutory scheme also support a finding that the procedural requirements for terminating a probationary employee are limited. For example, the Court of Appeals, in *Hawkins v. Department of Public Safety and Correctional Serv.,* 325 Md. 621, 624 n. 2, 602 A.2d 712 (1992), noted:

> During the probationary period, probationary new employees may be discharged "without reason and without cause."

*Small v. Secretary of Personnel,* 267 Md. 532, 535, 298 A.2d 173 (1973). The inquiry before the Secretary is limited to the "legality" of the rejection, and the Secretary "is precluded from considering whether or not legitimate management prerogatives were properly exercised." 60 Op. Att'y Gen. 545, 550 (1975).

Similarly, in 62 Op. Att'y Gen. 686, 689 (1977), it was stated: "During that ensuing probationary period, even though that employee is a permanent employee, she can be discharged without reason and without cause." *See also Small v. Secretary of Personnel,* 267 Md. 532, 535, 298 A.2d 173 (1973). The legislative history in no way indicates an intention to disagree with this line of reasoning or to make it more onerous to terminate a probationary employee.

■■■ In conclusion, we find that § 11–106 is inapplicable to terminations of probationary employees. We rely on the language itself, the administrative provisions, the legislative history, and prior interpretations. A probationary employee's substantive and procedural rights differ from the rights of a non-probationary employee.

## Section 11–303—Illegal or Unconstitutional

■■■ A terminated probationary employee's appeal is limited to whether the employer's action in terminating the employee was either illegal or unconstitutional. *See* Md.Code, State Pers. & Pens. § 11–303(d) (a probationary employee's termination is limited to whether "the termination is illegal or unconstitutional.")

The issue is whether the ALJ was correct in concluding that the evidence was legally insufficient to meet appellant's burden of proving that her termination was illegal or unconstitutional. Appellant argues two grounds: (1) failure to comply with § 11–106 and (2) racial discrimination. We have held that § 11–106 was not applicable, and thus, there was no procedural violation.

■■■ Moreover, in the context of the State Pers. & Pens. article, when the challenge to a termination is limited to

illegality or unconstitutionality, as in the case of at will or probationary employees, but not so limited in other categories, the thrust of the term "illegal" is the creation of an exception for terminations that contravene public policy.[2]

Public policy appears to have been first articulated as a basis for wrongful discharge by the Court of Appeals in *Adler v. American Standard Corp.*, 291 Md. 31, 432 A.2d 464 (1981). Adler, a former assistant general manager of American Standard's commercial printing division, alleged that he was discharged following his discovery of the payment of commercial bribes and the falsification of corporate records. *Id.* at 32–33, 432 A.2d 464. Adler brought his claim in federal district court and the federal court consulted the Court of Appeals to determine the state's position on abusive discharge. *Id.* at 32, 432 A.2d 464.

After noting the rising acceptance of this tort in jurisdictions nationwide, the Court of Appeals decided that "Maryland does recognize a cause of action for abusive discharge by an employer of an at will employee when the motivation for the discharge contravenes some clear mandate of public policy. . . ." *Id.* at 47, 432 A.2d 464. Ultimately, the Fourth Circuit held that the public policy exception in Maryland extends only to those situations where an employee is retaliated against for a "refusal to engage in illegal activity, or the intention to fulfill a statutorily prescribed duty." *Adler v. American Standard Corp.*, 830 F.2d 1303, 1307 (4th Cir.1987), *rev'g* 538 F.Supp. 572 (D.Md.1982) (applying Maryland law); *see also Teays v. Supreme Concrete Block, Inc.*, 51 Md.App. 166, 441 A.2d 1109 (1982) (holding *Adler* applicable to a case pending appeal when *Adler* was decided; case was remanded to give plaintiff an opportunity to allege facts that would show that his discharge violated public policy).

---

**2.** We do not hold that procedural violations that are not unconstitutional may not, under appropriate circumstances, be "illegal" within the meaning of the statutes being discussed.

In Maryland, public policies that have received protection include the refusal to violate clients' and customers' constitutional rights to privacy, *Kessler v. Equity Management, Inc.*, 82 Md.App. 577, 572 A.2d 1144 (1990), freedom from and opposition to sexual harassment that amounted to assault and battery, *Watson v. Peoples Sec. Life Ins. Co.*, 322 Md. 467, 588 A.2d 760 (1991), freedom from gender-based discrimination, *Molesworth v. Brandon*, 341 Md. 621, 672 A.2d 608 (1996), and the protection of children from abuse or neglect, *Bleich v. Florence Crittenton Servs. of Baltimore, Inc.*, 98 Md.App. 123, 632 A.2d 463 (1993). The Court of Appeals has also held that a public body cannot fire an at-will employee for the exercise of his First Amendment rights. *De Bleecker v. Montgomery County*, 292 Md. 498, 438 A.2d 1348 (1982); *see also O'Leary. v. Shipley*, 313 Md. 189, 545 A.2d 17 (1988); *Leese v. Baltimore County*, 64 Md.App. 442, 497 A.2d 159 (1985). In *Ewing v. Koppers Co.*, 312 Md. 45, 537 A.2d 1173 (1988), the Court of Appeals made clear that discharge based solely on the exercise of worker's compensation rights violates public policy. The *Ewing* court held that the abusive discharge cause of action is available not just to at-will employees, but also to employees working under an employment contract. *Id.* at 58, 537 A.2d 1173.

### 2.

Appellant also contends that her termination was illegal or unconstitutional because the basis given was a pretext for racial discrimination. Consistent with the above discussion, racial discrimination, if proved, would satisfy the "illegal or unconstitutional" test. Appellant's factual support for her argument is unclear, however, but appears to be based on her testimony that there were no other African American licensed social workers in Somerset County. Moreover, the ALJ observed that appellant's testimony was inaccurate because Ms. Lankford was African American. Both the ALJ and the circuit court observed that while the County Health Department workforce may not have been diverse, that in and of itself was not sufficient to establish that appellant was termi-

nated because of racial discrimination.[3] We agree that there was no legally sufficient evidence to support that claim.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

---

**3.** We do not mean to suggest that such evidence is not relevant and may not be sufficient to at least create a fact question under appropriate circumstances. We merely hold that the evidence was insufficient in this case.