765 A.2d 998

**Isaac L. CARROLL**

v.

**STATE of Maryland, PATUXENT INSTITUTION et al.**

**No. 1824, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

Jan. 31, 2001.

320

Wilbert L. Taylor, Baltimore, for appellant.

James A. Haynes, Towson, for appellees.

Argued before WENNER,* KENNEY, DEDORAH S. EYLER, JJ.

---

* Wenner, J., participated in the hearing and conference of this case while an active member of this Court; he participated in the adoption of this opinion as a retired, specially assigned member of this Court.

DEBORAH S. EYLER, Judge.

Isaac Carroll, appellant, challenges an order of the Circuit Court for Anne Arundel County granting a motion, filed by the State of Maryland, Patuxent Institution and the Injured Workers' Insurance Fund, appellees, to implead the Subsequent Injury Fund ("Fund") and to remand the case to the Worker's Compensation Commission ("Commission") and ruling that he is not a "public safety employee," within the meaning of Md.Code (1999), section 9–628 of the Labor and Employment Article ("LE"). He also has filed a motion to remand in this Court.

Appellant presents the following questions for review, which we have reordered and rephrased:

I. Did the trial court err in granting appellees' motion to implead the Subsequent Injury Fund and to remand the case to the Commission?

II. Did the trial court err in failing to explain, in writing, its failure to rule on his written motion opposing remand and seeking costs, expenses, and sanctions?

III. Did the trial court err in ruling that appellant was not a "public safety employee"?

IV. Are appellees equitably or judicially estopped to deny that the Commission under-calculated appellant's award?

## FACTS AND PROCEEDINGS

Appellant is a recently retired employee of the Patuxent Institution. On September 1, 1995, before he retired, appellant sustained an on-the-job injury to his left shoulder. He filed a claim against appellees with the Commission. On June 25, 1997, the Commission conducted a hearing on the issue of the nature and extent of the permanent partial disability of appellant's left shoulder.[1]

---

1. Before the Commission, appellant also had sought and obtained temporary total disability benefits. That award is not at issue in this appeal.

On July 7, 1997, the Commission issued an order finding, *inter alia,* that appellant had sustained permanent partial disability of 14% loss of industrial use of his left shoulder. The Commission ordered the appellees to pay compensation to appellant for 60 weeks at $94.20 per week. The Commission also approved the payment of an attorney's fee of $1,130.40. A dispute was ongoing between appellant and his former counsel, however, and for that reason the Commission further ordered that the fee be held in escrow "until fee dispute is resolved."

On July 10, 1997, appellant filed a motion for rehearing before the Commission on four issues: whether he was a "public safety employee," under LE § 9–628(a), and, therefore, was entitled to a higher weekly benefit; whether he was entitled to payment of the bill of a Dr. William Russell; whether his permanent partial disability of the left shoulder was greater than 14%; and whether he was entitled to payment of the attorney's fee that had been placed in escrow.

On September 9, 1997, the Commission issued an order affirming its finding of a permanent partial disability of 14% loss of industrial use of the left shoulder; finding that correctional officers are not "public safety employees," within the meaning of LE § 9–628(a); finding that Dr. Russell's bill had not been submitted for payment; and finding that it would not order payment of the attorney's fee that it had approved until after the dispute pertaining to the fee had been resolved.

On August 26, 1997, appellant filed a petition for *de novo* review and request for jury trial, in the Circuit Court for Anne Arundel County. The case was scheduled for trial on July 9, 1998. Discovery ensued.

On the morning of trial, appellees filed a written motion to implead the Subsequent Injury Fund ("Fund") and to remand the case to the Commission for further proceedings. Appellant opposed the motion, arguing that the case was not one in which the Fund properly could be impleaded and that, even if it were such a case, the motion to implead and remand was

premature. Appellant argued that the proper time to implead the Fund would be after the circuit court jury trial.

After hearing argument of counsel, the circuit court ruled from the bench, granting the motion to implead the Fund and to remand the case to the Commission. Appellant then asked the court to decide the legal question whether he was a "public safety employee," within the meaning of LE § 9–628. Counsel proffered facts to the court concerning appellant's job responsibilities. The court ruled that appellant was not a "public safety employee." Finally, the court requested counsel to prepare a written order.

On August 13, 1998, appellant filed a motion to place case on trial docket and for costs and expenses. He also filed a written response to appellees' motion to implead the Fund and to remand.

On August 28, 1998, the court issued a written order, entered on the docket that day, remanding the case to the Commission in accordance with its July 9, 1998 ruling. The court also ordered the Commission to reconsider its prior decision denying appellant's request for payment of Dr. Russell's medical bill and to schedule a hearing on the apportionment of the attorney's fee. The order also memorialized the court's ruling that appellant is not a "public safety employee." The court did not rule on appellant's August 13, 1998 motion.

On September 25, 1998, appellant filed a notice of appeal. During the pendency of the appeal, appellees filed a motion in this Court to implead the Fund and remand the case to the Commission.

Additional facts will be recited as pertinent to our review of the issues.

## DISCUSSION

### I.

The [Subsequent Injury] Fund was established to encourage the hiring of workers who have a permanent impairment which may be an obstacle to employment, relieving the

employer of liability for a disability attributable to the impairment which pre-dated the occupational injury.

*Subsequent Injury Fund v. Thomas,* 275 Md. 628, 634, 342 A.2d 671 (1975).

Under the Worker's Compensation Act ("Act"), an employee is entitled to compensation from the Fund when the following conditions are met: 1) the employee has a pre-existing permanent impairment [2] that is or is likely to be a hindrance or obstacle to his employment; 2) the employee sustains a subsequent injury, for which compensation is required, and the combined effects of the pre-existing impairment and the subsequent injury produce a partial or permanent total disability that is "substantially greater" than would have resulted from the subsequent injury alone; 3) the combined effects of the previous impairment and the subsequent injury result in a permanent disability exceeding 50% of the body as a whole; and 4) the pre-existing impairment, "as determined by the Commission at the time of the subsequent compensable event," and the subsequent injury each is compensable for at least 125 weeks. LE § 9–802(b). If those conditions are satisfied, the employer is liable only for the compensation payable for the subsequent injury, and the Fund is responsible for the compensation payable for the combined effects of the previous impairment and the subsequent injury. LE §§ 9–801 and 9–802. *See Subsequent Injury Fund v. Kraus,* 301 Md. 111, 112, 482 A.2d 468 (1984) ("[T]he employer is responsible for so much of the award as equals compensation payable for that disability which the subsequent injury would have caused, absent the prior impairment, and th[e] FUND is responsible for the balance of the award.").

In *Subsequent Injury Fund v. Ehrman,* 89 Md.App. 741, 599 A.2d 875 (1992), Judge Cathell, writing for this Court, traced the history of the legislatively established Fund and explained that, under the prior incarnation of subtitle 8 of the

---

**2.** The statute also includes employees with a disease or congenital condition; however, those are not at issue here.

Worker's Compensation Act, which was then recodified without substantive change,

> the Fund, upon being impleaded, has the right to request a hearing. The purpose of the hearing contemplated by the statute is to permit the relevant matters to be litigated. Prior conduct of other parties who are, or may be, in an adversarial relationship cannot estop the Fund from full participation as a 'party' entitled to raise defenses at that hearing or any subsequent proceedings.

> It is thus clear . . . that the Legislature intended that the Fund be a complete party in those cases in which its liability for compensation is at issue.

89 Md.App. at 750, 599 A.2d 875. Judge Cathell went on to emphasize that the reason why the Legislature conferred party status on the Fund, and why impleader of the Fund is required in any case in which it may be required to pay compensation, is to afford the Fund the opportunity to defend against any such claim or action. *Id.* at 751, 599 A.2d 875.

In their motion in the circuit court to implead the Fund and to remand the case to the Commission, appellees alleged that appellant's medical reports and records,

> suggest that [he] is or has suffered from certain conditions, disabilities, injuries, infirmities, and impairments . . . [that] pre-existed [his] present problems and complaints . . . and contribute to his overall disability and therefore, ultimately may impose liability on the [FUND] to the extent that [they] and the recent accidental injury each result in permanent disability compensable for 125 weeks which is equivalent to 25% of the body as a whole and that the overall disability is more than 50% of the body as a whole.

At the hearing on the motion to remand, appellees' counsel argued, more particularly, that appellant's medical records show that he has had two prior worker's compensation awards, one for 30% permanent partial disability of the left knee and one for 8% permanent partial disability of the lower back, and that, if he were to prove, as the expert medical testimony that he intended to put on at trial would show, that he had

sustained a permanent partial disability of 30% loss of use of the left shoulder, the case would be one that would require payment by the Fund.

Appellant's counsel responded by acknowledging the existence of the prior awards and further acknowledging that if appellant were found to have a 30% permanent partial disability of the left shoulder, the case would qualify for payment by the Fund, under LE § 9–802. He argued, however, that the proper time for impleading the Fund was after the verdict had been returned, not before.

LE § 9–807 addresses impleader of the Fund. It provides,

(a) *In general.*—In any case involving payment from the Subsequent Injury Fund, the Commission or any party in interest shall:

(1) give written notice to the State Treasurer or the attorney for the Subsequent Injury Fund that the Subsequent Injury Fund is or may be involved in the case; and

(2) implead the fund, in writing, as a party.

(b) *Time of impleading.*—(1) The Subsequent Injury Fund may be impleaded at any stage of the proceedings:

(i) before the Commission; or

(ii) on appeal.

(2) If the Subsequent Injury Fund is impleaded on appeal before a circuit court or the Court of Special Appeals, the court shall:

(i) suspend further proceedings; and

(ii) remand the case to the Commission for further proceedings to give the Subsequent Injury Fund an opportunity to defend against the claim.

 The following are the principal guidelines of statutory interpretation:

[T]he cardinal rule of construction of a statute is to ascertain and carry out the real intention of the Legislature. . . . The primary source from which we glean this intention is the language of the statute itself. . . . And in construing a statute we accord the words their ordinary and natural

signification.... If reasonably possible, a statute is to be read so that no word, phrase, clause or sentence is rendered surplusage or meaningless.... Similarly, wherever possible an interpretation should be given to statutory language which will not lead to absurd consequences ... Moreover, if the statute is part of a general statutory scheme or system, the sections must be read together to ascertain the true intention of the Legislature.

*Mazor v. Dep't of Correction,* 279 Md. 355, 360–61, 369 A.2d 82 (1977).

■■ The pertinent language of LE § 9–807 makes plain that, so long as the case is one "involving payment from the Subsequent Injury Fund," the Fund may be impleaded at *any* stage of the proceedings, including before the Commission, before the circuit court on appeal, or before this Court. Given that the statute concerns the process for bringing the Fund into a case, at any stage of the proceedings, for the purpose of allowing it to "defend the claim," it likewise is clear that cases "involving payment by the Subsequent Injury Fund" are not limited to those in which there already has been a finding that the conditions requisite for payment by the Fund have been met. Rather, cases "involving payment by the Subsequent Injury Fund" must include those in which the conditions for payment by the Fund may be found, even though they have not yet been found.

*Eastern Stainless Steel v. Nicholson,* 60 Md.App. 659, 484 A.2d 296 (1984), *aff'd,* 306 Md. 492, 510 A.2d 248 (1986), is instructive on this point. In that case, the employee filed a claim for compensation before the Commission for injuries sustained while on the job. The employer/insurer contested the claim on the issue of accidental injury. After the Commission issued an award in favor of the employee, the employer/insurer appealed to the circuit court. At that stage of the proceedings, the employer/insurer moved to implead the Fund and to remand the case to the Commission. The motion was granted and the case went before the Commission again, this time with the Fund participating as a party. The Commission

again found that the employee was entitled to benefits. The Fund appealed to the circuit court, but its appeal was dismissed for lack of prosecution. Thereafter, the employer/insurer moved to reinstate its original appeal. The circuit court reinstated the appeal, but ruled that the issues raised in it had been rendered moot. On appeal, this Court held that the employer/insurer could not reinstate its appeal in the circuit court because, after the Fund was impleaded and the case was remanded to the Commission, the Commission's first ruling no longer had effect, and, therefore, an appeal from that ruling had no effect either.

The holding in *Eastern Stainless Steel v. Nicholson* refutes the argument that appellant presents in this case. The thrust of appellant's assertion is that he should not be made to return to the Commission to retry issues that already have been determined, especially given that the Commission's finding of a permanent partial disability of 14% loss of industrial use of the left shoulder did not satisfy the requirements that the combined effects of the previous impairment and the subsequent injury result in a permanent disability exceeding 50% of the body as a whole and that the subsequent injury be compensable for at least 125 weeks; only if a jury determines that the disability resulting from the subsequent injury is such as to require payment by the Fund should the case be remanded to the Commission for further proceedings. *Eastern Stainless Steel* teaches, however, that once the Fund properly is impleaded, the case must be remanded to the Commission for it to determine all issues anew, because only by doing so may the Fund have the opportunity to defend the claim. Under appellant's theory, the Fund would not have an opportunity to defend until after the conditions requisite to its having to pay were established. Such an approach either would defeat the Fund's entitlement to defend the claim, or would needlessly add to the proceedings.

The motion to implead the Fund and remand the case to the Commission alleged facts from which the circuit court reasonably could conclude that this is a claim in which the Fund may

be required to pay compensation. Those facts were further supported by the arguments advanced by counsel for both parties during the hearing. Accordingly, the circuit court did not err in granting the motion to implead the Fund and in remanding the case to the Commission for further proceedings.

## II.—IV.

We shall discuss these issues together as they are interrelated.

■ Appellant contends that the trial court erred in failing to explain, in writing, its failure to rule on his motion opposing remand and seeking costs, expenses, and sanctions. We see no error on the part of the court. As we have explained, the court correctly ruled to allow appellees to implead the Fund, and remanded the case to the Commission on that basis. LE § 9–807 provides that "[i]f the Subsequent Injury Fund is impleaded on appeal before a circuit court ... the court shall: (i) suspend further proceedings...." Moreover, as we explained in *Eastern Stainless Steel v. Nicholson,*

> If on appeal from a decision of the [Commission] the Subsequent Injury Fund is impleaded, the court shall suspend further proceedings and remand the case to the Commission. This completes the matter before that court and the case shall return to the body from which it came to allow the Fund to defend. The decision of the Commission on remand becomes the final decision from which all further appeals must be taken.

60 Md.App. at 661–62, 484 A.2d 296. The Court of Appeals, in affirming, explained:

> We agree with appellant that the word "suspend" in [the predecessor statute] means to stop temporarily. The statute makes clear, then, that "further proceedings" must stop temporarily.

\* \* \* \* \*

As we see it, when the phrase "suspend further proceedings" is read in context, it becomes clear that the legislature only means to say that the circuit court *stops the entire workmen's compensation proceedings, and remands* the cause to the Commission *where the proceedings resume before the Commission.*

*Eastern Stainless Steel v. Nicholson,* 306 Md. at 499, 510 A.2d 248 (emphasis in original).

In the case *sub judice,* once the circuit court granted appellees' motion to implead the Fund, it was required to suspend the proceedings and remand the case to the Commission; i.e., it was not to take any further action. The circuit court acted correctly, therefore, by not ruling on the motion that appellant filed after the motion to remand had been granted. For the same reason, however, the circuit court should not have ruled on the question whether appellee was a "public safety employee," within the meaning of LE § 9–628. That issue is for the Commission to address in the remand proceeding; to the extent that any party seeks to challenge the Commission's determination thereafter, it may do so on a subsequent appeal.

Finally, appellant contends that, by virtue of a statement made by appellees' counsel during the argument on the motion to implead the Fund, appellees are estopped, either judicially or equitably, to deny that the Commission undercalculated its July 7, 1997 award to appellant. In the Commission's order of that date, it directed appellees to pay compensation to appellant for 60 weeks at $94.20 per week. Under LE § 9–627(k)(3), a 14% disability requires payment for 70 weeks whereas a 12% disability requires payment for 60 weeks.

During the argument in the circuit court, appellant's counsel asked the court to address whether the Commission's award was mathematically incorrect in that it awarded him only 60 weeks compensation for a 14% disability. The following exchange took place:

[APPELLANT'S COUNSEL]: .... The Court can just entertain them as matters of law, which will entitle the

Claimant to receive some money right now. There was a mathematical error in the award of the Commission, which we maintained as a matter of law.

[APPELLEES' COUNSEL]: No, I just want to say—

[APPELLANT'S COUNSEL]: Excuse me.

THE COURT: Do you agree with him?

[APPELLEES' COUNSEL]: I agree with that. I will pay him that 10 percent.

No more mention of this topic was made at the hearing, and the court did not issue any ruling on the issue.

For the reasons we have explained, it would have been improper for the circuit court to have ruled on the question whether there was a mathematical error in the award, given its disposition of the motion to implead the Fund and remand the case to the Commission. Moreover, as we also have explained, the case is properly before the Commission for *de novo* proceedings, in which the Fund will participate. Thus, whether the July 7, 1997 order contained a mathematical error is a moot point.[3]

**ORDER REMANDING CASE TO WORKERS' COMPENSATION COMMISSION AFFIRMED; OTHERWISE, ORDER VACATED. COSTS TO BE PAID BY APPELLANT.**

---

**3.** Because of our disposition of the case on direct review, we do not address the motion to remand filed in this Court during the pendency of the appeal.