784 A.2d 1151

**Carole J. CAREY**

v.

**CHESSIE COMPUTER SERVICES, INC., et al.**

**No. 1350, Sept. Term, 2000.**

Court of Special Appeals of Maryland.

Nov. 14, 2001.

---

232

Argue before JAMES R. EYLER, KRAUSER, RAYMOND G. THIEME, Jr., (Retired, specially assigned), JJ.

KRAUSER, J.

This workers' compensation case has a complicated procedural history, having bounced back and forth between the Workers' Compensation Commission ("Commission")and the Circuit Court for Baltimore County several times; each time acquiring another layer of proceedings and each time evading resolution.

It is now before us on an appeal filed by the claimant, Carole J. Carey, (appellant). Ms. Carey's appeal is from an order of the Baltimore County Circuit Court, granting summary judgement in favor of her employer, Chessie Computer Services, Inc., and, its insurer, Reliance Insurance Company (appellees). By granting that motion, the circuit court, in effect, overturned all previous Commission and court rulings in favor of appellant on the ground that they were based on an earlier Commission ruling, which, according to that court, "became of no effect upon the impleader of the Subsequent Injury Fund."

On appeal, appellant challenges that ruling on a variety of grounds, claiming, among other things, that the circuit court lacked jurisdiction to review the earlier Commission order and was barred from so ruling by the doctrine of *res judicata* and Maryland Rule 7–203(a), which creates a thirty-day period within which a petition for judicial review must be filed. Notwithstanding the number of issues raised by appellant, they are reducible to one question: What effect does a motion to implead the Subsequent Injury Fund ("Fund") have on circuit court proceedings and any past actions taken by that court or the Commission before the impleading of the Fund?

For the reasons that follow, we hold that the impleading of the Fund does not affect the validity of an existing award of compensation made by the Commission. That award will remain in full force and effect until the Commission has had the opportunity to conduct a rehearing on all issues, with the Fund participating as a party, and has issued a new award or superseding order. If the Fund declines to participate in that rehearing or is dismissed as a party, the Commission may permit any existing award of compensation or order of the Commission to stand without conducting the proceedings that the impleading of the Fund would have required. We further hold that no motion, requesting leave of court to implead the Fund, is required by the Labor and Employment Article (L.E.), § 9–807 of the Maryland Code Annotated (1991, 1999 Repl.Vol., 2001 Supp.), and that such a motion, if filed, should

be granted without delay or may itself be treated as an impleader of the Fund. Furthermore, when the Fund is impleaded, all proceedings before the circuit court must cease, including judicial consideration of pending motions. Once the Fund is impleaded, the case must be remanded to the Commission to permit the Fund to participate as a party. The Commission at that time may consider the propriety of the impleader.

## BACKGROUND

Appellant filed a claim with the Commission alleging that, on August 3, 1992, she sustained injuries to her neck, back, and knees while working for appellee Chessie Computer Services, Inc. Two of the injured areas—the neck and lower back—had previously been injured while she was working for another employer, and she had filed a claim under the Federal Employers' Liability Act (FELA) for the prior injury.

Following the filing of her workers' compensation claim, appellant chose not to pursue that claim at that time; instead, she sought redress under Title 45 of the FELA. When her FELA claim was dismissed by the United States District Court for the District of Maryland, appellant turned her attention to her claim before the Commission.

A hearing was held before the Commission on November 7, 1996. Eleven days later, on November 18, 1996, the Commission issued a decision in which it found that appellant had "sustained an accidental injury arising out of and in the course of employment" and that appellant's disability was "the result of the aforesaid accidental injury." Consequently, the Commission ordered appellees to pay appellant "compensation for temporary total disability . . . less credit for wages paid," and medical expenses. The Commission also ordered that "from the Compensation herein awarded" appellant's lawyer was "entitled to an Attorney Fee in the amount of $5,166.60."

Dissatisfied with the Commission's decision, appellees filed a petition for judicial review in the Circuit Court for Baltimore County on December 18, 1996. The petition claimed simply

that the Commission had "erroneously awarded the Claimant benefits."

On October 11, 1997, appellant filed a motion for summary judgment. Instead of filing an answer to that motion, appellees moved to implead the Fund[1] pursuant to L.E. § 9–807. One month later, on November 12, 1997, a hearing was held in the circuit court before the Honorable John G. Turnbull, II, on both motions. At that hearing, appellees argued that when they filed their motion to implead the Fund, the court "was divested of jurisdiction" and therefore could not "consider the motion for summary judgment." They urged the court to suspend proceedings immediately, asserting that the court was required to do so by L.E. § 9–807, and to remand the matter to the Commission so that it could be re-heard with all parties present, including the Fund. In response, appellant urged the court to grant her motion for summary judgment before remanding the case to the Commission to avoid "another year or so of litigation based on a subsequent appeal by the Employer from a further decision of the Workers' Compensation Commission after remand." In addition, appellant maintained that, if the court granted her summary judgment before it granted appellees' motion to implead, it would "have no affect [sic] whatsoever on the Subsequent Injury Fund" because the Fund would still "have the right to have the matter heard at the Commission level" and there the Fund could "raise the question[s] of accidental injury ... [and] compensability of the claim."

Because "the motion [for summary judgment] was filed prior to the motion to implead," and the court had not yet granted the motion to implead, Judge Turnbull ruled that the court still had jurisdiction over the matter and would consider the summary judgment motion first. After noting the failure

---

1. "The [Subsequent Injury] Fund was established to encourage the hiring of workers who have a permanent impairment which may be an obstacle to employment, relieving the employer of liability for a disability attributable to the impairment which pre-dated the occupational injury." *Carroll v. State of Maryland, Patuxent Inst.,* 136 Md.App. 319, 324–25, 765 A.2d 998 (2001).

of appellees to file an answer to the motion for summary judgment, Judge Turnbull granted appellant's motion for summary judgment, then granted appellees' motion to implead the Fund and ordered that the matter be remanded to the Commission. Because the order in which Judge Turnbull ruled on the motions at issue is important, we quote his words:

The Claimant's motion for summary judgement filed October 10, 1996 paper number fifteen thousand is granted. The motion to implead filed October 14, 1996, paper twenty thousand is granted. The case is remanded to the Commission for further proceedings.

Appellees then filed a motion to alter or amend judgment. That motion was denied on December 11, 1997. Two years later, on December 23, 1999, a hearing was held before the Commission. Although it had been impleaded, the Fund did not participate in that hearing, and neither the record filed in this Court nor the briefs submitted by the parties provides any explanation for the Fund's absence. Nonetheless, the Commission heard argument on issues that it believed did not involve the Fund, namely, whether appellees had failed to comply with the 1996 Commission decision granting appellant temporary total disability benefits and, if so, whether they should be penalized for failing to comply with that award. In its decision, dated January 18, 2000, the Commission found that appellees had "failed to pay the Order of the Commission dated November 18, 1996," and that that failure had resulted in an underpayment to appellant of $38,866.28. Consequently, the Commission ordered appellees to pay appellant "an additional 20% percent penalty for non-payment of the award" and an additional attorney's fee of $400.00 to appellant's attorney.

Once again, on February 16, 2000, appellees filed a petition for judicial review in the Circuit Court for Baltimore County. In that petition, appellees claimed that both the November 18, 1996 and the January 18, 2000 decisions of the Commission had "erroneously awarded the Claimant benefits, erroneously awarded attorneys' fees, and erroneously awarded a penalty." In response, appellant filed a partial motion to dismiss seeking dismissal of appellees' request for judicial review of the No-

vember 18, 1996 Commission decision. On May 31, 2000, appellees filed a motion for summary judgment.

The day after appellees filed that motion, Judge Turnbull granted appellant's partial motion to dismiss. Then, on June 21, 2000, the Honorable John O. Hennegan, also of the Baltimore County Circuit Court, granted appellees' motion for summary judgment. In granting that motion, Judge Hennegan found that the November 18, 1996 award of the Commission "became of no effect upon the impleader of the Subsequent Injury Fund." He then reversed the Commission's decision of January 18, 2000, and ordered that the matter be remanded to the Commission "for further proceedings including, but not limited to compensability and benefits issues with full participation by all parties, including the Subsequent Injury Fund." Appellant filed a motion for reconsideration and, after that motion was denied, noted this appeal.

## DISCUSSION

Appellant contends that Judge Hennegan erred in granting summary judgment in favor of appellees, in declaring that the November 18, 1996 Commission decision was "of no effect," and in reversing the January 18, 2000 Commission decision, which was based on the 1996 decision. To further explain, the 1996 Commission decision had ordered appellees to pay appellant monthly compensation for the temporary total disability she sustained; the 2000 Commission decision that followed ordered appellees to make the payments required by the 1996 decision, which the Commission found they had not done, and penalized them for failing to do so.

Appellant's argument has four components: First, appellant maintains that "there was no case pending before [Judge Hennegan] with respect to the appeal of the decision of the Workers' Compensation Commission dated November 18, 1996" at the time he made his ruling, because Judge Turnbull had previously granted appellant's partial motion to dismiss as to that issue. She therefore argues that Judge Hennegan had no jurisdiction to issue the order in question. Second, appel-

lant asserts that appellees' "appeal of the November 18, 1996 order of the Workers' Compensation Commission was ... barred by limitations," because that "appeal" was filed "beyond the 30 day period allowed for [an] appeal of a decision of the [Commission]" under Maryland Rule 7–203. Third, appellant contends that the portion of appellees' petition for review that sought review of the Commission's 1996 decision was barred by res judicata, because it "was in effect asking the Circuit Court for Baltimore County to rescind its prior Order of November 13, 1997," which granted summary judgment to appellant and thereby affirmed the Commission's 1996 decision. And fourth, appellant asserts that "[t]he order of the Workers' Compensation Commission of January 18, 2000 was correct."

As stated earlier, this matter is before us on an appeal from an order granting summary judgment in favor of appellees. "Summary judgment may be invoked to prevent an unnecessary trial in a worker compensation appeal, just as in any other action." *Dawson's Charter Serv. v. Chin*, 68 Md. App. 433, 440, 511 A.2d 1138 (1986). As in any other action, it is appropriate when "there is no genuine dispute as to any material fact and ... the party in whose favor judgment is entered is entitled to judgment as a matter of law." Md. Rule 2–501(e). In considering a grant of summary judgment we "review[ ] the same material from the record and decide[ ] the same legal issues as the circuit court." *Lopata v. Miller*, 122 Md.App. 76, 84, 712 A.2d 24 (1998). In doing so, "we do not accord deference to the trial court's legal conclusions." *Id.* at 83, 712 A.2d 24. The standard for reviewing the granting of a summary judgment motion is "whether the trial court was legally correct." *Heat & Power Corp. v. Air Prods. & Chems., Inc.*, 320 Md. 584, 591, 578 A.2d 1202 (1990).

We begin our analysis with appellant's jurisdictional argument. Appellant contends that Judge Hennegan had no jurisdiction to grant summary judgment in favor of appellees, given Judge Turnbull's earlier order granting appellant's partial motion to dismiss. Judge Turnbull's order meant, accord-

ing to appellant, that "there was no case pending before [Judge Hennegan] with respect to the appeal of the decision of the Workers' Compensation Commission dated November 18, 1996." Appellant's argument, however, ignores the fact that this was not the only issue raised by appellees' petition for judicial review and therefore it was not the only one before Judge Hennegan. In that petition, appellees sought review of both the 1996 and the 2000 decisions of the Commission. Thus, Judge Turnbull's order dismissing appellees' action for judicial review of the Commission's 1996 decision did not adjudicate all of the claims in that petition. Consequently, it was not a final judgment, and was therefore subject to revision by Judge Hennegan. We explain.

Maryland Rule 2–602(a) states in part that:

[A]n order or other form of decision, however designated, that adjudicates fewer than all of the claims in an action … or that adjudicates less than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action:

(1) is not a final judgment;

(2) does not terminate the action as to any of the claims or any of the parties; and

(3) is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties.

In short, "Rule 2–602(a) makes clear that an order that does not adjudicate all of the claims in an action, or that adjudicates less than an entire claim … is not a final judgment and may be revised at any time before the entry of a final judgment." *Gertz v. Anne Arundel County,* 339 Md. 261, 272–73, 661 A.2d 1157 (1995). We now apply that rule to appellant's claim that Judge Hennegan was deprived of jurisdiction by Judge Turnbull's dismissal of appellees' claim as to the 1996 Commission decision.

■ In the instant case, Judge Turnbull's order of June 1, 2000, granted appellant's motion for partial summary judgment and denied appellees' request in their petition for judicial

review of the Commission's 1996 decision. As previously mentioned, in that petition for review, appellant also sought review of the Commission's 2000 Award. Consequently, Judge Turnbull's order lacked finality because it did "not adjudicate all of the claims in [the] action" and was therefore subject to revision "at any time before the entry of a final judgment." *Gertz*, 339 Md. at 272–73, 661 A.2d 1157. Thus, contrary to appellant's assertion, Judge Hennegan did not lack jurisdiction to address the Commission's 1996 decision even though Judge Turnbull had previously granted appellant's partial motion to dismiss as to that decision. Indeed, " 'as a general principle, one judge of a trial court ruling on a matter is not bound by the prior ruling in the same case by another judge of the court; the second judge, in his discretion, may ordinarily consider the matter de novo.' " *Gertz*, 339 Md. at 273, 661 A.2d 1157 (quoting *State v. Frazier*, 298 Md. 422, 449, 470 A.2d 1269 (1984)).

We turn next to appellant's claims that appellees' "appeal" of the 1996 decision was "barred by limitations" because it was filed "beyond the 30 day period allowed for [an] appeal of a decision of the [Commission]" under Md. Rule 7–203, and because Judge Hennegan's review of that violated the doctrine of res judicata. We find both contentions unpersuasive.

Maryland Rule 7–203 governs the time for filing a petition for judicial review of an administrative agency decision in a circuit court and states in part:

(a) **Generally.** Except as otherwise provided in this Rule or by statute, a petition for judicial review shall be filed within 30 days after the latest of:

(1) the date of the order or action of which review is sought;

(2) the date the administrative agency sent notice of the order or action to the petitioner, if notice was required by law to be sent to the petitioner; or

(3) the date the petitioner received notice of the agency's order or action, if notice was required by law to be received by the petitioner.

Unfortunately, appellant misconstrues the nature of a petition for judicial review. She incorrectly refers to appellees' petition for judicial review as an "appeal." It is not. "[A]n action for judicial review of an administrative decision is an *original* action ... *not* an appeal." *Kim v. Comptroller of the Treasury,* 350 Md. 527, 534, 714 A.2d 176 (1998). The difference is crucial here. Unlike "[t]he time requirements for filing appeals," which are "ordinarily treated as jurisdictional," the time requirements for filing a petition for judicial review are not. *Id.* at 535–36, 714 A.2d 176. In fact, "the thirty-day period under Rule 7–203 is ... considered in the nature of a statute of limitations." *Colao v. County Council,* 109 Md.App. 431, 445, 675 A.2d 148, *aff'd,* 346 Md. 342, 697 A.2d 96 (1997). And statutes of limitation "are generally waivable, including the 30–day time limit for filing a petition for judicial review." *Kim,* 350 Md. at 536, 714 A.2d 176. Indeed, according to the Committee note to Rule 7–203, a challenge to the timeliness of a petition for judicial review "must be specifically raised either by preliminary motion under Rule 7–204 or in the answering memorandum filed pursuant to Rule 7–207" or it is waived. *See also Colao,* 346 Md. at 362, 697 A.2d 96 (stating that "it is incumbent on a defendant/respondent to raise limitations timely as an affirmative defense and that the failure to do so constitutes a waiver of that defense"). And that is precisely what occurred here. Appellant did not raise the timeliness issue in the court below and therefore her argument has been waived.

Appellant further argues that Judge Hennegan's review of the Commission's 1996 decision violated the doctrine of res judicata. Specifically, appellant contends that appellees' petition for judicial review of the Commission's 1996 decision "was in effect asking the Circuit Court for Baltimore County to rescind its prior Order of November 13, 1997," which granted summary judgment in favor of appellant and thereby affirmed the Commission's 1996 decision. We disagree.

The doctrine of res judicata "precludes the relitigation of matters that have been fully and fairly litigated and

finally decided between parties, by a tribunal of competent jurisdiction." *Murray International Freight Corp. v. Graham,* 315 Md. 543, 547, 555 A.2d 502 (1989). Res judicata has three elements: "(1) the parties in the second litigation are the same, or in privity, with the parties in the earlier case; (2) the second suit presents the same cause of action as the first suit; and (3) the first suit produced a final judgment on the merits in a court of competent jurisdiction." *Roane v. Washington County Hosp.,* 137 Md.App. 582, 590, 769 A.2d 263 (2001). It is as to the third element that appellant's res judicata argument fails. Judge Turnbull had no authority to grant appellant's motion for summary judgment. Once the motion to implead was before Judge Turnbull, he was required to grant it pursuant to L.E. § 9–807 and then remand the case to the Commission.

L.E. § 9–807 provides:

(a) *In General.*—In any case involving payment from the Subsequent Injury Fund, the Commission or any party in interest shall:

(1) give written notice to the State Treasurer or the attorney for the Subsequent Injury Fund that the Subsequent Injury Fund is or may be involved in the case; and

(2) implead the Fund, in writing, as a party.

(b) *Time of impleading.*—(1) The Subsequent Injury Fund may be impleaded at any stage of the proceedings:

(i) before the Commission; or

(ii) on appeal.

(2) If the Subsequent Injury Fund is impleaded on appeal before a circuit court or the Court of Special Appeals, the court shall:

(i) suspend further proceedings; and

(ii) remand the case to the Commission for further proceedings to give the Subsequent Injury Fund an opportunity to defend against the claim.

In interpreting L.E. § 9–807, we apply the standard rules of statutory construction. "[T]he cardinal rule is to

ascertain and effectuate legislative intent." *Mayor of Baltimore v. Chase,* 360 Md. 121, 128, 756 A.2d 987 (2000); *Prince George's County, Maryland v. Vieira,* 340 Md. 651, 658, 667 A.2d 898 (1995). " 'The primary source from which we glean this intention is the language of the statute itself. . . .' " *Subsequent Injury Fund v. Ehrman,* 89 Md.App. 741, 747, 599 A.2d 875 (1992) (quoting *Mazor v. Dep't of Correction,* 279 Md. 355, 369 A.2d 82 (1977)). "If the language is clear and unambiguous, there is usually no need to look further." *Gary v. State,* 341 Md. 513, 521, 671 A.2d 495 (1996). "Even if the statute is clear and unambiguous, however, 'we are not precluded from consulting legislative history as part of the process of determining the legislative purpose or goal' of the law." *Azarian v. Witte,* 140 Md.App. 70, 97, 779 A.2d 1043, 1058 (2001) (quoting *Morris v. Prince George's County,* 319 Md. 597, 604, 573 A.2d 1346 (1990)) (internal citations omitted). In interpreting statutory language, we must give the words their "ordinary and natural meaning." *In Re Victor B.,* 336 Md. 85, 94, 646 A.2d 1012 (1994). Also, we must avoid an interpretation that would produce "an illogical, absurd, or inconsistent result." *Smack v. Dep't of Health and Mental Hygiene,* 134 Md.App. 412, 420, 759 A.2d 1209 (2000). And we "may not insert or omit words to make a statute express an intention not evidenced in its original form." *Board of Educ. v. Lendo,* 295 Md. 55, 63, 453 A.2d 1185 (1982). *See also Taylor v. Nationsbank,* 365 Md. 166, 181, 776 A.2d 645 (2001).

The language of L.E. § 9–807 is clear and unambiguous. It provides that either "the Commission or any party in interest" may implead the Fund. L.E. § 9–807(a). Once the Fund is impleaded, if done before the circuit court, "the court shall: (i) suspend further proceedings; and (ii) remand the case to the Commission. . . ." L.E. § 9–807(b)(2). "[O]rdinarily the word 'shall,' unless the context within which it is used indicates otherwise, is mandatory when used in a statute, and thus denotes an imperative obligation inconsistent with the idea of discretion." *Bright v. Unsatisfied Claim and Judgment Fund Bd.,* 275 Md. 165, 169–70, 338 A.2d 248 (1975). Consequently, Judge Turnbull did not have the discretion to

delay ruling on that motion until he had ruled on other motions presented by the parties. To conclude otherwise would undercut the very purpose of L.E. § 9–807, which is to ensure that the Fund has the opportunity to participate in all proceedings in which its interests are at stake. Undoubtedly, the Fund had an interest in Judge Turnbull's decision granting appellant's motion for summary judgment, which affirmed the Commission's 1996 decision, awarding benefits to appellant. Moreover, any interpretation of L.E. § 9–807 that permits the circuit court to exercise discretion as to when to grant a motion to implead will inevitably lead to "inconsistent results," particularly, if the circuit court, as here, delays remand until it has ruled on key issues. Upon remand, the Fund has the opportunity to "assert a complete defense to the claim against it, including raising the issues of accidental injury and causal connection." *Ehrman*, 89 Md.App. at 752, 599 A.2d 875. As the Commission will then have the opportunity to "determine all issues anew," *Carroll v. State of Maryland, Patuxent Inst.*, 136 Md.App. 319, 329, 765 A.2d 998 (2001), it may reach a completely different conclusion. In that event, if the first judicial decision is permitted to stand-in this case Judge Turnbull's order granting summary judgment in favor of appellant on the issue of employer/insurer liability— and the Commission's post-remand decision is subsequently affirmed by the circuit court, the result will be two standing judgments, involving the same issues in the same case and in direct conflict with each other. It is precisely to prevent such an occurrence that we are enjoined to construe a statute to avoid "inconsistent results." *Smack*, 134 Md.App. at 420, 759 A.2d 1209; *Western Correctional Inst. v. Geiger*, 130 Md.App. 562, 568, 747 A.2d 697 (2000).

Moreover, it was within Judge Turnbull's discretion to treat the motion to implead as tantamount to impleading the Fund. L.E. § 9–807 does not require that a party seeking to implead the Fund must first obtain leave of court. It merely states that "any party in interest" that wishes to implead the Fund shall "(1) give written notice to the State Treasurer or the attorney for the Subsequent Injury Fund . . . and (2) implead

the Fund, in writing, as a party." L.E. § 9–807(a). Nowhere is the party required to file a motion to implead or to otherwise seek court approval.

In fact, L.E. § 9–807, for the purpose of impleading the Fund, places the parties to the action on an equal footing with the Commission (which of course does not need the circuit court's permission to implead the Fund) by stating that "the Commission or any party in interest" may implead the Fund by giving proper notice and then impleading the Fund in writing. L.E. § 9–807(a)(1)(2). No motion is required.

Nor is there any indication in either the language or history of this provision that the legislature intended to add a requirement that does not exist, to our knowledge, anywhere else in Maryland law. In the Maryland Rules, for example, Rule 2–332 governs impleading in civil actions. There, the only requirement for impleading a third party is that the impleader "cause a summons and complaint, together with a copy of all pleadings, scheduling notices, court orders, and other papers previously filed in the action, . . . be served upon" the third party. Md. Rule 2–332(a). Nothing more is required.

Moreover, to interpolate a requirement that judicial approval must be first sought and obtained would further violate the canons of statutory construction by adding language so as to " 'reflect an intent not evidenced in that language.' " *Chesapeake and Potomac Tel. Co. v. Dir. of Fin. for Mayor of Baltimore,* 343 Md. 567, 579, 683 A.2d 512 (1996) (quoting *Condon v. State,* 332 Md. 481, 491, 632 A.2d 753 (1993)); *see also Taylor v. Nationsbank,* 365 Md. 166, 181, 776 A.2d 645 (2001); *Lendo,* 295 Md. at 63, 453 A.2d 1185.

Finally, we "confirm the meaning reached by reference to the words" by considering the statute "in the context of the entire statutory scheme of which it is a part." *Vieira,* 340 Md. at 658, 667 A.2d 898. In the Workers' Compensation Act, when the legislature wanted the parties to seek leave of court, it expressly said so. Under L.E. § 9–726(a), for example, a party must file "with the Commission a written motion" in order to have a case reheard. And under L.E. § 9–736(a),

a readjustment of the rate of compensation may be made by the Commission "on the application of any party in interest or on its own motion. . . ." In addition, L.E. § 9–652(a) provides that "an employer who is liable for the full extent of the occupational deafness of the covered employee may implead any other employer in whose employment the covered employee was exposed to harmful noise." To implead the other employer under this section, the impleading employer must simply provide notice "to the impleaded employer and to the Commission" on a form provided by the Commission. L.E. § 9–652(b). No motion is required, and leave of court is not necessary to bring the potentially liable employer into the action.

We conclude, therefore, that Judge Turnbull was required by L.E. § 9–807 to either grant appellees' motion to implead without delay or to treat the motion itself as a written impleader and to remand the case to the Commission for further proceedings with the Fund present.[2] His failure to do so was error, and the order he issued, granting summary judgment in favor of appellant, was void *ab initio.* Because that order was void *ab initio,* "there was nothing from which" appellees could have appealed. *In Re Appeal No. 371,* 24 Md.App. 95, 99, 329 A.2d 410 (1974). Accordingly, appellant's claim that appellees, "having failed to file a timely appeal, [are] barred by res judicata from attacking the [1966] judgment of [Judge Turnbull]" is meritless.

Having concluded that Judge Hennegan did not err in considering the Commission's 1996 decision, as appellant maintains, we now determine whether Judge Hennegan was "legally correct" in granting summary judgment to appellees on the ground that the 1996 decision "became of no effect upon the impleader of the Subsequent Injury Fund." We hold that he was not.

---

2. We need not decide whether there are exceptions to the rule embodied in L.E. § 9–807 and described herein. If exceptions do exist, they are not presented by this case.

Appellees argue that the Commission's 1996 decision was rendered "null and void" upon the impleading of the Fund. In support of that claim, appellees cite *Eastern Stainless Steel v. Nicholson,* 60 Md.App. 659, 484 A.2d 296 (1984), *aff'd,* 306 Md. 492, 510 A.2d 248 (1986). In *Eastern Stainless Steel,* the "Employer/Insurer," as the appellant was designated in that case, filed a petition for judicial review in the Circuit Court for Baltimore County, seeking review of a decision of the Commission awarding the claimant compensation for his injuries. *Id.* at 662, 484 A.2d 296. After filing that action, the employer/insurer moved to implead the Fund. *Id.* The court granted that motion, suspended further proceedings, and remanded the case to the Commission. *Id.* Upon remand, the employer/insurer, claimant, and Fund participated in a hearing before the Commission. Following that hearing, the court again decided that the claimant was entitled to compensation. *Id.* at 662–63, 484 A.2d 296. The Fund, but not the employer/insurer, sought judicial review of that decision. *Id.* at 663, 484 A.2d 296. After the Fund failed to pursue this matter for over a year, the court dismissed the Fund's action for want of prosecution. *Id.* Thereafter, the employer/insurer sought to reinstate its action for judicial review, seeking judicial review of the Commission's first decision. *Id.* In response, the claimant filed a motion for summary judgment, claiming that "there was no dispute as to a material fact and that the issues were rendered moot by the dismissal of the Fund's" action for judicial review. *Id.* at 664, 484 A.2d 296. The circuit court granted the motion, and the employer/insurer appealed to this Court. *Id.* We affirmed the circuit court's dismissal of the employer/insurer's attempt to reinitiate its action for review of the Commission's first decision on the ground that "the Commission's [second] decision superseded its first holding...." *Id.* at 667, 484 A.2d 296. That decision was then affirmed by the Court of Appeals. *Eastern Stainless Steel v. Nicholson,* 306 Md. 492, 510 A.2d 248 (1986).

Appellees cite our statement in *Eastern Stainless Steel* that "the first order appealed from by Employer/Insurer had no effect after remand of the case to the Workmen's Compensa-

tion Commission." 60 Md.App. at 667, 484 A.2d 296. They have taken these words out of context. The prefatory words introducing that statement were unfortunately omitted as well as the reasons for reaching that conclusion. What we actually said was: "For reasons we will state, we hold that the first order appealed from by Employer/Insurer had no effect after remand of the case to the Workmen's Compensation Commission." *Id.* The "reasons" we then gave were:

> First, the issue of accidental injury was reconsidered. The Commission could take into account any additional evidence adduced by the impleaded party, the Fund. Second, Employer/Insurer participated with the Fund in the second hearing. The Commission decided the identical issue concerning all those who would share responsibility for paying the award to claimant. The parties' joint participation and shared interest in the second hearing indicates the Commission considered all available evidence and made a final decision from which both parties could appeal, but Employer/Insurer did not.

*Id.* at 667–68, 484 A.2d 296.

In brief, we so held because, on remand, the Commission issued a new decision after considering the same issues but, this time, with all interested parties participating and additional evidence presented. In other words, we held in *Eastern Stainless Steel* that, upon remand, the Commission's decision was of no *preclusive* effect, that is, the parties were then free to relitigate all of the same issues. We did not rule, as appellees contend, that the Commission's decision was rendered a nullity by the impleader. There is no language in L.E. § 9–807 that supports such a position. Indeed, L.E. § 9–807 provides only that "[i]f the Subsequent Injury Fund is impleaded on appeal before a circuit court or the Court of Special Appeals, the court shall: (i) suspend further proceedings; and (ii) remand the case to the Commission for further proceedings to give the Subsequent Injury Fund an opportunity to defend against the claim." L.E. § 9–807(b)(2). It does not suggest, either expressly or impliedly, that the Commission's decision is, upon remand, of no further force and effect.

Indeed, such a holding would strip the claimant of the benefits that he had been awarded after a hearing in which the employer had had the opportunity to argue the pre-existing nature of the claimant's injuries. It is one thing to give the employer what amounts to a gratuitous second bite of the apple; it is another to give it an entirely new apple, simply because it belatedly impleaded the Fund. Consequently, we reiterate: the Commission's first decision remains in full force and effect until the case has been reheard, with the Fund present, and a new decision issued by the Commission. If the Fund declines to participate in that rehearing or is dismissed as a party, the Commission may permit any existing award of compensation or order of the Commission to stand without conducting the proceedings that the impleading on the Fund would have required.

The perils of holding otherwise are vividly illustrated by the facts of the case *sub judice*. In contrast to *Eastern Stainless Steel*, the issues in the instant case have never been reheard. The Commission has not as yet held a second hearing and therefore, as of the date of this opinion, is no closer to rendering a second decision to supersede the first. To hold that the mere impleading of the Fund renders the Commission's 1996 decision, awarding appellant temporary total disability benefits, a nullity would not only be an unwarranted extrapolation from the language of L.E. § 9–807, it would undermine the very purposes of the Workers' Compensation Act: it would in effect deny appellant, for an unconscionably long period of time, the benefits she was lawfully awarded until the Commission has reheard the case.

Nor does our recent decision in *Carroll v. State of Maryland, Patuxent Inst.*, 136 Md.App. 319, 765 A.2d 998 (2001), lend support for the proposition that a remand to permit the Fund to participate in a rehearing of the issues renders the existing award of compensation a nullity. In *Carroll*, the Commission found that the claimant had suffered a permanent partial disability and ordered his employer/insurer to pay compensation. *Id.* at 323, 765 A.2d 998. The claimant subsequently filed a motion for rehearing in which he sought,

among other things, an increase in benefits. *Id.* After the Commission denied his motion, the claimant filed a petition for judicial review in the Circuit Court for Anne Arundel County. *Id.* On the morning of trial, the claimant's employer/insurer filed a motion to implead the Fund and to remand the matter to the Commission. *Id.* After a hearing, the circuit court granted that motion, whereupon the claimant noted an appeal to this Court. *Id.* at 324, 765 A.2d 998. On appeal, the claimant argued that "he should not be made to return to the Commission to retry issues that [had] already ... been determined," especially given that the disposition of those issues was insufficient to establish the prerequisites of Fund liability. *Id.* at 329, 765 A.2d 998. He also claimed that the case should not be remanded unless "a jury determines that the disability resulting from the subsequent injury is such as to require payment by the Fund." *Id.*

In rejecting the claimant's arguments, we determined that L.E. § 9–807 did not require that "conditions requisite for payment by the fund" be established before it may be impleaded. *Id.* at 328, 765 A.2d 998. Citing *Eastern Stainless Steel,* we concluded that when the Fund is impleaded in an action for judicial review, the case must be remanded so that the Commission may "determine all issues anew." *Id.* at 329, 765 A.2d 998. "[O]nly by doing so," we explained, "may the Fund have the opportunity to defend the claim." *Id.*

We did not, however, state that the Commission's decision becomes a nullity upon the impleading of the Fund. The proceedings "begin anew" in that the parties have an opportunity to revisit and retry issues that had been previously decided. The Commission's first decision, however, remains in effect until superseded by a subsequent decision of the Commission on the same issues. To hold otherwise, as noted earlier, would mean a suspension in the payment of benefits to the employee, which had been ordered after both sides had had the opportunity to present their cases before the Commission, merely because the employer or insurer chose belatedly to file a motion to implead. Such a result would work a grave

injustice on the claimant, invite frivolous motions to implead, and unnecessarily delay resolution of claims. It would also run afoul of the rule that an appeal does not stay "an order of the Commission requiring payment of compensation," and the general policy behind that rule, namely, "that of affording day to day support to injured employees." *See* L.E. § 9–741(1); *see also Bayshore Indus., Inc. v. Ziats,* 229 Md. 69, 77, 181 A.2d 652 (1962).

Finally, we consider appellant's last contention that "[t]he order of the workers' compensation commission of January 18, 2000 was correct." In that order, the Commission found that appellees "failed to pay the Order of this Commission dated November 18, 1996," which resulted in an underpayment of $38,866.28. The Commission also directed appellees to pay appellant "an additional 20% penalty for nonpayment of the award" as well as "an additional attorney fee in the amount of $400.00" to appellant's attorney. In the order granting summary judgment in favor of appellees, having considered the Commission's 1996 decision to be "of no effect," Judge Hennegan reversed the Commission's 2000 decision. Although the parties presented arguments regarding the Commission's 2000 decision itself, the record does not indicate that Judge Hennegan based his decision reversing the Commission's 2000 decision on anything other than his previous conclusion that the 1996 decision was of no effect. In light of our holding that the 1996 decision remains in effect until superseded by a new decision, the court must reconsider its ruling, though not necessarily reach a preordained result. We shall therefore vacate Judge Hennegan's order and remand this case for further proceedings consistent with this opinion.

**JUDGMENT OF THE CIRCUIT COURT GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEES IS VACATED. CASE REMANDED TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS.**

**COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY APPELLEES.**